LittletoN, Judge,
delivered the opinion of the court:
The facts with reference to the several items of plaintiff’s claim, which we have found from all the evidence submitted, preclude recovery by plaintiff. The evidence submitted by plaintiff when considered in connection with the provisions of the contract, specifications, drawings and the evidence submitted by the defendant fails to show that any of the decisions of the contracting officer or the head of the department on appeal exceeded the authority conferred by the contract, or that, in view of the provisions of the contract and the facts before them, any of the decisions of which plaintiff complains were unreasonable or arbitrary. Under article 15 of the contract the decisions of the contracting officer and the head of the department are therefore final and not subject to review here. Article 15 provided that all disputes “concerning questions arising under this contract shall be decided by the contracting officer * * *, subject to written appeal by the contractor within 30 days to the head of the department * * *, whose decisions shall be final and conclusive upon the parties thereto as to such questions.”
The contract, article 3, gave the contracting officer authority to make changes in the work called for by the contract, to order additional work under article 4 to meet unforeseen or changed conditions, and to order extra work under article 5 deemed by him to be necessary in connection with the work called for by the contract.
The contractor agréed and stipulated under paragraph GC-10 of the specifications that it would furnish all materials, labor, etc., necessary to fully complete the work according to the true intent and meaning of the drawings and specifications, of which intent and meaning the contracting officer would be the interpreter. The contracting officer and the head of the department were, therefore, by express stipulations of the contract made the arbiters of all disputes arising under the contract between the parties thereto. Plaintiff alleges and insists that the decisions of the contracting officer and the head of the department with reference to the items of the claim were contrary to the express provisions of the *480 contract, specifications, and drawings, or were unreasonable upon the facts and under the contract provisions.
In Burchell v. Marsh, 17 How. 344, 349, 350, the court said:
The general principles, upon which courts of equity interfere to set aside awards, are too well settled by numerous decisions to admit of doubt. There are, it is true, some anomalous cases, which, depending on their peculiar circumstances, cannot be exactly reconciled with any general rule; but such cases can seldom be used as precedents.
Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes, it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact. A contrary course would be a substitution of the judgment of the chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation. In order, says Lord Thurlow (Knox v. Symmonds, 1 Ves. Jr. 369), “to induce the court to interfere, there must be something more than an error of judgment, such as corruption in the arbitrator, or gross mistake, either apparent on the face of the award, or to be made out by evidence; but in case of mistake, it must be made out to the satisfaction of the arbitrator, and that if it had not happened, he should have made a different award.”
Courts should be careful to avoid a wrong use of the word “mistake,” and, by making it synonymous with mere error of judgment, assume to themselves an arbitrary power over awards. The same result would follow if the court should treat the arbitrators as guilty of corrupt partiality, merely because their award is not such an one as the chancellor would have given. We are all too prone, perhaps, to impute either weakness of intellect or corrupt motives to those who differ with us in opinion.
In Kihlberg v. United States, 97 U. S. 398, the court had before it the claim of a contractor for additional compensation under a contract for the transportation of stores between certain points which provided that the distance should be ascertained and fixed by the chief quartermaster and that the decision of the chief quartermaster should be conclusive. The court, at p. 401, said:
*481 His [the chief quartermaster’s] action cannot, therefore, be subjected to the revisory power of the courts without doing violence to the plain words of the contract. Indeed, it is not at all certain that the government would have given its assent to any contract which did not confer upon one of its officers the authority in question. If the contract had not provided distinctly, and in advance of any services performed under it, for the ascertainment of distances upon which transportation was to be paid, disputes might have constantly arisen between the contractor and the government, resulting in vexatious and expensive and, to the contractor oftentimes, ruinous litigation. Hence the provision we have been considering. Be this supposition as it may, it is sufficient that the parties expressly agreed that distances should be ascertained and fixed, by the chief quartermaster, and in the absence of fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment, his action in the premises is conclusive upon the appellant as well as upon the Government. The contract being free from ambiguity, no exposition is allowable contrary to the express words of the instrument.
In United States v. Gleason, 115 U. S. 588, 602, the court, after quoting from the above case, said:
While we are to determine the legal import of these provisions according to their own terms, it may be well to briefly recall certain well-settled rules in this branch of the law. * * *.
Another rule is, that it is competent for parties to a contract, of the nature of the present one, to make it a term of the contract that the decision of an engineer, or other officer, of all or specified matters of dispute that may arise during the execution of the work shall be final and conclusive, and that, in the absence of fraud or of mistake so gross as to necessarily imply bad faith, such decision will not be subjected to the revisory power of the courts. Martinsburg & Potomac Railroad v. March, 114 U. S. 549; Chicago, Santa Fe &c. Railroad v. Price, 138 U. S. 185.
Further, at pp. 601, 608, the court said:
But was it at all the case that the engineer, in refusing the last application for further extension, based such refusal wholly upon a consideration of prior condoned *482 delinquencies ? Even if we cannot take notice of the affidavit of Major Stickney, contained in this record, in which he states that his refusal to grant a further extension was based upon the failure of the contractors to make proper provisions during the period of the last extension for carrying on their work, and that they had not fulfilled the conditions upon which the time had already been extended, we are permitted, and indeed required, in absence of evidence of bad faith on his part, to presume that he acted with due regard to his duty as between the government and the contractors.
The fallacy, as we think, in the position of the court below was in assuming that it was competent to go back of the judgment of the engineer, and to revise his action by the views of the court. This, we have seen, could only be done upon allegation and proof of bad faith, or of mistake or negligence so great, so gross, as to justify an inference of bad faith. But in this case we find neither allegation nor proof. * * *.
In other words, the plaintiffs allege that they were prevented from completing their work by force and violence of the elements and not by any fault of their own, and that the judgment of the engineer in refusing an extension was therefore wrongful and unjust. But as they had agreed, in the contract as we have construed it, that the engineer was to decide whether the failure to complete was due to the force of the elements or to their fault, their allegation now is that the determination of the engineer was wrongful and unjust, because he decided the submitted issue against them. Of course, such an allegation was wholly insufficient on which to base an attempt to upset the judgment of the engineer.
But, even if we pass by the insufficiency of the allegation, we perceive no evidence, or finding based on evidence, which would have sustained a stronger and more adequate allegation.
In Ripley v. United States, 223 U. S. 695, 701, 702, the court said:
The principal contention related to the right of the plaintiff to recover damages occasioned by the refusal of the inspector to permit blocks to be laid on the jetty as the work progressed. The contract provided that these blocks should be put in place when “in the judgment of the United States agent in charge” the core or mound had sufficiently consolidated. Until the agent determined that the core had settled, the contractor had no right to do this part of the work. No matter how long *483 the delay or how great the damage, he was entitled to no relief unless it appeared that the refusal was the result of “fraud or of such gross mistake as would imply a fraud.” Martinsburg & P. R. Co. v. March, 114 U. S. 549; United States v. Mueller, 113 U. S. 153.
But the very extent of the power and the conclusive character of his decision raised a corresponding duty that the agent’s judgment should be exercised — not capriciously or fraudulently, but reasonably and with due regard to the rights of both the contracting parties. The finding by the court that the inspector’s refusal was a gross mistake and an act of bad faith necessarily, therefore, leads to the conclusion that the contractor was entitle to recover the damages caused thereby.
Item 5 of plaintiff’s claim, which is considered first in the findings, relates to the refusal of the contracting officer and the head of the department to pay plaintiff $6,525.86 which it claims was due under the terms of the contract, specifications, and the schedule of unit prices made a part of article 1 of the contract. See findings 5 to 15, inch
The contracting officer and the head of the department on appeal held that the provisions of the contract contemplated and provided that the lump-sum bid price would be based upon earth excavation in the total quantity as indicated and required by the drawings, and that if ledge rock should be encountered within the lines and grades shown on the drawings which displaced earth, upon the basis of which the lump-sum contract price was to be based, the contract price would he increased by the unit prices bid for rock excavation as set forth in the schedule of unit prices and that the lump-sum contract price would be decreased by an amount computed at the unit price, as set forth in the schedule of unit prices, for the decrease in the amount of earth not excavated because •displaced by the ledge rock. Plaintiff alleges and insists that these decisions were erroneous and in violation of the express provision of the contract between the parties.
The proof submitted does not sustain this allegation. The language of paragraphs 1, 4, 5, and 8 of the specifications, •quoted in finding 9, might have been made clearer with reference to the fact that the government would' decrease or make a deduction from the lump-sum contract price at the unit price bid in the schedule for earth not excavated in the event ledge *484 rock should be encountered which displaced earth. But the language used in the quoted provisions of the specifications and in the schedule of unit prices was clear enough to put the bidder on notice that such a deduction would be necessary and, therefore, would be made by the government at the unit price bid for earth not excavated and that the contract price would be increased by an amount computed at the unit prices bid for the number of cubic yards of rock excavation in lieu of earth. In fact plaintiff’s evidence in this case shows that the proper interpretation of the specifications and the schedule of unit prices is that where ledge rock displaced earth within the lines and grades shown on the drawings it would not be entitled to be paid for earth displaced by rock, and therefore not excavated, in addition to payment for rock excavation. Ward Bros., an experienced excavating contractor and upon whom plaintiff appears to have relied, so interpreted the specifications when the bids were being made.-- This is strong evidence that the specifications were not ambiguous so as to be misleading. When the change order was under consideration and on appeal' after it was issued, plaintiff contended, in effect,, that it and its subcontractor computed the amount of their lump-sum bids for excavation indicated on the drawings on the basis of general earth excavation in the total quantity so indicated by the drawings, but that in determining the unit prices for general and trench rock excavation to be bid in the schedule of unit prices they arrived at the unit prices of $3 and $8 after giving credit against their estimated lump-sum price on the basis of earth excavation in' the total quantity indicated and that therefore no decrease’ should be made in the lump-sum contract price. In other words, that the unit prices for rock excavation were intended by them to be net, and to be added to the lump-sum contract price without any decrease therefrom for earth indicated but not excavated. The evidence is not sufficient to prove that plaintiff specifically considered the matter when making its bid to the defendant on the basis of the bid made by Ward’ Bros, to it. Be that as it may, the plaintiff and its subcontractor were not justified, much less authorized under the-language of the contract as signed by the parties, in assum *485 ing that they had the right to determine, without any disclosure to the government before the contract was signed, what amount should be taken off the lump-sum bid for earth excavation in the total quantity indicated on the drawings in arriving at the unit prices for rock excavation. The contract and specifications contemplated that the unit prices bid for rock would be paid if rock was encountered and that the lump-sum contract price would be decreased on the basis of the unit-price bid in the schedule for earth excavation, to the end that a dispute concerning the amount which should be paid for rock or the amount by which the lump-sum contract price should be decreased for earth not excavated might be avoided. Plaintiff made no disclosure to the government when it submitted its lump-sum and unit-price bids as to how or on what basis it had arrived at the lump-sum contract price or the unit prices set forth in the schedule as a part of the bid. The contract provided that the bidder’s lump-sum proposal and the contract price would be based upon general earth excavation in the total quantity indicated by the drawings, and that in case ledge rock should be encountered the contract price would be increased or decreased in accordance with the unit prices stated in the contract. The schedule called for unit prices for earth and rock to be used for increases and decreases in the contract price. If plaintiff and its subcontractor in making their lump-sum and unit-price bids had followed these provisions of the specifications and the schedule of unit prices, no difficulty or controversy would have arisen. It is clear, and there is no contention to the contrary, that the unit prices bid for rock excavation applied, whether such excavation displaced earth required to be included in, the lump-sum bid price or was ordered as extra and additional work through changes and extras under articles 3, 4, or 5 of the contract. Plaintiff was therefore put on notice to bid in its lump-sum the total amount to be paid by the government if all excavation indicated was earth, and, in addition, to bid a unit price for extra or decreased earth excavation and also to bid unit prices in addition to the lump-sum bid for any and all rock excavation. If plaintiff based its bid of unit prices for rock excavation on the assumption that *486 no decrease in the lump-sum price would be made if rook should be encountered, it failed to make its bid in accordance with the requirement of the contract. The decision of the contracting officer conformed to the requirements of the contract and was within his authority under the provision of the specifications and the schedule of unit prices.
The contracting officer did not, as plaintiff seems to contend, reduce the unit prices stated in the contract by 75 cents per cubic yard. He allowed plaintiff the full unit prices for the number of cubic yards of general and trench rock excavation and added that to the contract price, and, at the same time, decreased the lump-sum contract price by 7.5 cents per cubic yard for the same number of cubic yards of earth not excavated. The total amounts of the increase and decrease for the number of cubic yards involved were set forth in the change order as debits and credits, and the difference between the total amount of the authorized increase and the total amount of authorized decrease was paid. The Change Order E, which was followed in F and G, was as follows:
* :¡= * Contract Price
2. Boole Excavation — General 7,405.875 cu. yds. at_«$3. 00 Increase Decrease $22,217. 62 _
Less 7,405.875 cu. yds. earth excavation - . 75 _ $5, 554.41
Booh Excavation in trenches 567,437 cu. yds. at— 8. 00 4, 539. 50 _
Less 567.437 cu. yds. yds. earth excavation in trenches- 1. 50 851.15
£ * #
Plaintiff is not entitled to recover on this item of the claim.
The next claim in the order of the findings is Item 1, under which plaintiff seeks to recover $2,616.75 for alleged excess general earth excavation at the unit price of 75 cents per cubic yard by reason of an error in the grading drawing as to the location of the buildings in the area where excavation was called for. See findings 16-23 incl. There was an error as to the relative positions of the buildings to be constructed and the contour lines as shown on the grading plan, but the proof does not establish that this error resulted in plaintiff being required to excavate, on the whole, a greater quantity of earth than the total quantity indicated on and *487 calculable from the contract drawings and specifications. In making its estimate of the total quantity of general earth excavation for the purpose of making its bid *md in preparing its claim here made, plaintiff did not properly consider the contract drawings having reference to the excavation for the construction of the concrete boundary gutter and catch basins.
The claim here made was prepared and submitted to the War Department after the excavation work had been completed in accordance with an understanding with the contracting officer as to the making of this claim for alleged excess excavation due to the error in the grading plan.
Plaintiff contends that the excavation required by the contracting officer in connection with the construction of the boundary gutter and catch basins, as set forth in the findings, was excess excavation not required by the contract drawings. But the proof is not sufficient to sustain this contention. The War Department made a determination denying this claim and transmitted it to the Comptroller General because the claim was filed after final payment had been made. The evidence shows that plaintiff was not required to excavate more than the total amount of excavation calculable from the drawings and required by the contract.
Plaintiff is not entitled to recover on this item of the claim.
Items 2 and 3 of the claim have been withdrawn by plaintiff.
Under Item 4 plaintiff seeks to recover $1,377.75 for alleged excess excavation of 1,837 cubic yards for roads at 75 cents' per cubic yard, the unit price for extra earth excavation set forth in the contract. See finding 25. Plaintiff’s evidence not only fails to establish that it excavated a greater number of cubic yards of earth for roads than the amount indicated and required by the contract drawings, but the evidence of record shows that the contract drawings indicated and called for all the excavation for roads which plaintiff was required. to do.
Plaintiff is not entitled to recover on this claim.
Item 6 of the claim is for $3,180 for alleged extra work on' additional Type A concrete work, including forms, which it is alleged was not covered by the lump-sum contract price, nor by the unit-price bid of $12 per cubic yard in the contract. *488 The facts with reference to this item of the claim are set forth in findings 6-28, inclusive This claim is not sustained by the evidence. The concrete work for which this additional amount is claimed consisted of Type A concrete foundation walls 12 inches in width and of varying heights, under certain of the buildings, which concrete walls were ordered by the contracting officer under articles 3 and 4 of the contract and paragraphs 33 and 34 of the specifications under the heading of “Concrete and Cement Finish Work.”
The, contracting officer had the clear right under articles'3 and 4 of the contract and the provisions of the specifications to specify the kind and size of foundation walls to meet and overcome the changed or unforeseen conditions due to unstable soil conditions. The schedule of unit prices constituting a part of the contract, on the basis of and in accordance with which the contracting officer made payment for these concrete walls, clearly provided that the unit prices listed therein “shall be used as a basis in making deductions from, or additions to, the contract price, provided any deviation from the drawings or specifications decreases or increases the amount of work indicated and required therein.” At the time the contract was made it was not known and the drawings did not indicate that the foundation footings of any of the buildings would have to be extended below the point shown on the drawings at the basement floor of the buildings, except in certain instances not material here, but the specifications, as well as articles 3 and 4, expressly contemplated that it might be necessary to extend the foundations of the building beyond the dimensions given on the drawings by reason of the soil conditions. The specifications also contemplated and provided that, if it should be necessary to extend the foundations, such extensions should be of concrete. The specifications-also specifically stated that the price to be allowed per cubic yard for such additional concrete would be as stated in the unit prices of the bid. One of the chief purposes of the schedule of unit prices required of bidders was to provide the basis for payment for work of this character which might become necessary and be ordered by the contracting officer under the express terms of the contract. It was the duty of plaintiff to make its unit price bid accordingly. The con *489 tracting officer in ordering the construction of the extra concrete foundation walls 12 inches in width, and in making payment therefor at $12 per cubic yard, as provided in t]je contract for such work, clearly acted within the scope of his authority under the contract and in accordance with its terms and conditions. The fact that plaintiff may have*' failed, in making its'bid as to the unit price to be paid for all extra Type A, concrete work, to take into consideration that concrete walls or other concrete work less than 20 inches in width might be required and ordered by the contracting officer cannot be made the basis for payment to the contractor of an amount in excess of that specifically named and fixed in the contract.
Plaintiff is not entitled to recover on this item of the claim.
Item 7 of the claim is for $805.22, damages for alleged unreasonable delay resulting from the alleged unreasonable requirement of the contracting officer that the footings and the concrete foundation walls of the extended foundations of the buildings be poured in two operations, instead of one. This claim cannot be allowed. See Findings 29 and 80. The contracting officer, as held by the head of the department on plaintiff’s appeal, acted in accordance with good engineering practice and normal procedure generally followed on such operations. The contracting officer also acted within the ■clear authority conferred upon him by the specific provisions •of paragraphs 26, 29, and 30, page 51 of the specifications.
Plaintiff is not entitled to recover under this item.
The last two items, 8 and 9 of the claim, may be treated together. See findings 31, 32, and 33.
Under the first, recovery is sought of $2,556 as damages by reason of alleged unreasonable delay caused by the direction of the contracting officer that trim not be installed in the rooms of the buildings until a period of three weeks had elapsed after plaster had been placed in such rooms, including bathrooms; and, under the second, recovery is sought of $2,405.48 for the cost of painting certain plastered ceilings with four coats of paint to meet the ruling of the contracting officer rejecting the plastering of such ceilings by reason of •objectionable cracks therein.
*490 Plaintiff’s contract did not require it to paint the ceilings,, nor did the contracting officer require it to paint them. Plaintiff elected to paint the ceilings in lieu of removing the final coat of rejected plaster,-and replacing it.
The decisions of the contracting officer with reference to both of these items were within the clear authority conferred upon him by the contract and in' no way unreasonable or grossly erroneous. Moreover, plaintiff made no protest and did not appeal from the decisions of the contracting officer to the head of the department as required by article 15 of the contract. Plaintiff is therefore not entitled to recover* on these items:
The petition is dismissed. It is so ordered.
Madden, Judge; and Whitaker, Judge, concur.
Whaley, Chief Justice, concurs in the result.
Jones, Judge, took no part in the decision of this case.