[Civ. No. 11015. Third Dist. Dec. 16, 1965.]

A. TEICHERT & SON, INC., Plaintiff and Appellant, v. STATE OF CALIFORNIA et al., Defendants and Respondents.

738

McDonough, Holland, Schwartz, Allen & Wahrhaftig and V. Barlow Goff for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Philip K. Jensen, Deputy Attorney General, Harry S. Fenton, Kingsley T. Hoegstedt, Orrin F. Finch, and Ronald A. Zumbrun, for Defendants and Respondents.

FRIEDMAN, J.—Plaintiff A. Teichert & Son, Inc., a highway construction contractor, sues the state for damages and extra costs incurred in the course of a highway construction project. The complaint, in 16 separate counts, alleges submission of plaintiff's claim to the State Board of Control on November 14, 1963, and rejection by that body on December 17, 1963. The complaint was filed February 11, 1964. The state's demurrer was sustained without leave to amend and plaintiff appeals from the judgment.

The principal issues are: (a) whether the complaint shows compliance with the statutory period of limitations for filing claims with the State Board of Control and (b) whether the various counts state facts sufficient to constitute grounds of relief.

The lawsuit seeks recovery of six distinct money items on alternative legal theories. Assuming the truth of the complaint's factual assertions, we summarize its allegations:

A. The first claim, pleaded in five counts, is for $546,204.95, constituting additional construction costs caused by excessive soil moisture along the construction right of way. The construction contract was executed on February 24, 1959. Plaintiff had been furnished a materials report describing moisture conditions at certain points in the project area.

On July 27, 1959, plaintiff notified the state of excessive moisture. Plaintiff proceeded with the work, but encountered excess costs and delay in installing drainage facilities and in meeting soil compaction requirements. The various theories of recovery are described in the first five counts as follows:

(1) The state's material report misrepresented soil conditions, inducing a lower bid than plaintiff would otherwise have made; as a result of ''said breach of warranty and misrepresentations'' plaintiff has been damaged in the specified amount.

(2) Failure to compensate for changes in the character of the work and for extra work in accordance with express provisions of the construction contract.

(3) Failure to pay in accordance with an executed oral modification of the written contract.

(4) Excessive moisture conditions made performance of the contract impossible, discharging plaintiff from its obligations; nevertheless, plaintiff finished the work under modifications of the contract, which the state has refused to perform.

(5) Plaintiff relied to its detriment on oral promises to compensate for the extra work.

B. The second claim, pleaded in Count 6, stems from an interpretive dispute over the equipment rental provisions of the contract. Plaintiff claims that the equipment rental rates fixed by the contract entitle it to $34,606.82 more than the state allowed.

C. The third claim, pleaded in Count 7, seeks recovery of $19,591.70 for extra work authorized by a change order, premised upon plaintiff's interpretation of contract provisions establishing rates for extra work.

D. The fourth claim, pleaded in Counts 8 through 10, seeks $2,717.33 for cleaning debris from a conduit. The counts are based, respectively, on the theory of refusal to compensate under the contract provisions, executed oral modification of the written contract, and promissory estoppel.

E. The fifth claim, pleaded in Counts 11 through 13, seeks $1,598.62 for extra work of installing temporary drains, premised upon legal theories of refusal to compensate for extra work under the contract, executed oral modification of the contract, and promissory estoppel.

F. The sixth claim, pleaded in Counts 14 through 16, seeks reimbursement of $1,352.94 for the expense of hiring flagmen, an expense which was occasioned by an earth slide. Recovery is predicated on theories of extra work under the contract, executed oral modification of the contract and promissory estoppel.

As regards compliance with the period of limitations for filing claims with the State Board of Control, all counts of the complaint depend on these basic allegations in the first count:

"XIII On or about May 1, 1961, the revised final estimate of compensation for work performed was returned by plaintiff to defendants with the exceptions to the amount allowed as final payment noted thereon, and on or about April 11, 1963, defendants notified plaintiff of their refusal to fully compensate plaintiff for the work performed.

"XIV On or about November 14, 1963, a claim was filed with the Board of Control of the State of California as required by law, and thereafter, on or about December 17, 1963, the claim was denied by said Board."

The reference to "revised final estimate" prompts us at this point to take judicial notice of the Standard Specifications of the State Department of Public Works, Division of Highways (Aug. 1954), which we have power to do. (Code Civ. Proc., § 1875, subd. 3; *Chas. L. Harney, Inc.* v. *State of California,* 217 Cal.App.2d 77, 85-86 [31 Cal.Rptr. 524].) These were incorporated in the construction contract between plaintiff and the state, except as superseded by special provisions of the contract. We set out section 9(f) of the Standard Specifications in the margin.[1]

---

[1] Section 9(f) of the Standard Specifications provides:

"(f) *Final Payment.* Within 30 days after acceptance by the Director of Public Works, the Engineer will make a proposed final estimate in writing of the quantities of work done under the contract and the value of such work and will submit such estimate to the Contractor. Within 30 days thereafter the Contractor shall submit to the Engineer his written approval of said proposed final quantities or a written statement of all claims which he has for additional compensation claimed to be due under the contract.

"On the Contractor's approval or if he files no claims within said period of 30 days, the Engineer will issue a final written estimate as submitted to the Contractor and the State will pay the entire sum so found to be due after deducting therefrom all previous payments and all amounts to be kept and all amounts to be retained under the provisions of the contract.

"If the Contractor within said period of 30 days files claims, the Engineer will issue as a semifinal estimate the proposed estimate submitted to the Contractor and within 30 days the State will pay the sum found due

At the time of contract performance and for some time thereafter, Government Code section 644 (as enacted by Stats. 1959, ch. 1715) was the governing statute of limitations. (*Chas. L. Harney, Inc.* v. *State of California, supra,* 217 Cal.App.2d 77, 90-91.) Applicable to most claims against the state, it required claim presentation to the State Board of Control "within two years after the claim first arose or accrued" and that a lawsuit be filed within six months after claim rejection.

In 1963 the Legislature adopted a comprehensive revision of state liability legislation. (Stats. 1963, ch. 1715.) This legislation repealed section 644 and substituted present Government Code section 911.2. The latter, a permanent provision, requires that claims of the sort involved here be presented to the State Board of Control within one year after accrual of the cause of action. The 1963 legislation became effective on September 21, 1963. One of its features was a temporary provision, section 152 of chapter 1715, which was aimed at clarifying the time limits on claims which had accrued but had not yet been presented to the State Board of Control when the 1963 legislation became effective. In effect, as to claims which were not already barred by the former two-year limitation of section 644, it permitted presentation within one year after September 21, 1963.[2]

thereon after deducting all prior payments and all amounts to be kept and retained under the provisions of the contract. The Engineer shall then consider and investigate the Contractor's claims and shall make such revision in the said estimate as he may find to be necessary, and shall then make and issue his final written estimate. The State will pay the amount so found due, after deducting all previous payments and amounts to be retained under the contract.

"All prior partial estimates and payments shall be subject to correction in the final estimate and payment.

"The final estimate shall be conclusive and binding against both parties to the contract on all questions relating to the performance of the contract and the amount of work done thereunder and compensation therefor, except in the case of gross error.

"Payment on the semifinal estimate will be due within 30 days from the date the same is issued by the Engineer. Payment on the final estimate is due within 30 days from the date it is issued."

[2] The provision in question, section 152 of chapter 1715, provided:

"(a) This act applies to all causes of action heretofore or hereafter accruing.

"(b) Nothing in this act revives or reinstates any cause of action that, on the effective date of this act, is barred either by failure to comply with any applicable statute, charter or ordinance requiring the presentation of a claim or by failure to commence an action thereon within the period prescribed by an applicable statute of limitations.

"(c) Subject to subdivision (b), where a cause of action accrued prior to the effective date of this act and a claim thereon has not been presented

In the trial court the state successfully contended that plaintiff's claims arose more than two years before September 21, 1963, the effective date of the 1963 legislation; being already barred by the two-year limitation of former section 644, Government Code, plaintiff's claims were not entitled to the one-year extension conferred by section 152; hence, were dead when plaintiff belatedly submitted its claim to the State Board of Control on November 14, 1963. Reduced to simple terms, the question is whether plaintiff's claims had arisen or accrued by September 21, 1961.

Teichert faced two periods of limitation: the two-year period for filing its claim with the State Board of Control and the six-month period following rejection within which to file suit. ■ Generally, a cause of action accrues and the statute of limitations starts to run when the cause of action is complete and the party has a right to sue. (*Maguire* v. *Hibernia Sav. & Loan Soc.*, 23 Cal.2d 719, 733 [146 P.2d 673, 151 A.L.R. 1062]; *Merchants Fire Assur. Corp.* v. *Retail Credit Co., Inc.*, 206 Cal.App.2d 55, 58 [23 Cal.Rptr. 544]; 1 Witkin, Cal. Procedure (1954) p. 614.) ■ Actually, the contractor had no right to sue until the State Board of Control had acted. (*Chas. L. Harney, Inc.* v. *State of California, supra,* 217 Cal.App.2d at p. 102.) To determine when the first (two-year) period commenced, it is necessary to fix the time when Teichert would have had a right to sue had it not been for intervention of the Board of Control procedure.

■ Plaintiff contends that its right to sue for money claimed under the construction contract did not accrue until completion of the nonjudicial remedy established by the contract specifications, specifically section 9(f) of the Standard Specifications (fn. 1, *supra*). With this contention we agree. Either of two requirements of law supplies a footing for this view—exhaustion of administrative remedies or exhaustion of contract remedies.[3]

The settlement procedure established by section 9(f) of the

---

prior to the effective date of this act, a claim shall be presented in compliance with this act, and for the purposes of this act such cause of action shall be deemed to have accrued on the effective date of this act.
 "(d) . . . . . . . . . . . ."

[3]In fairness to the trial court, we note that section 9(f) was not a factor in the trial court debate on demurrer. Apparently section 9(f) makes its first appearance on appeal. The state does not object to the tardy injection of this new element. When a question is one of law only and neither party has been deprived of an opportunity to debate it, a shift in theory on appeal is permissible (*Panopulos* v. *Maderis*, 47 Cal.2d 337, 341 [303 P.2d 738].)

Standard Specifications should be viewed in the light of various provisions of the State Contract Act (Gov. Code, § 14250 et seq.) permitting the contracting authority to authorize changes in the work as the project progresses.[4] Another provision, section 14402, declares: ''Payments upon contracts shall be made as the department prescribes. . . .'' When changes occur in the work specified in the original contract, unsettled debits and credits will usually exist upon project completion. Section 9(f) sets up a series of steps for the settlement of claims between the contractor and the state: First, after completion of the project the state highway engineer submits a *proposed final estimate.* Second, within 30 days the contractor either approves that estimate or submits a statement of additional claims. Third, if additional claims are filed, the proposed final estimate is then relegated to the status of a *semifinal estimate,* and the state pays the money agreed to be due. Fourth, the engineer investigates the additional claims, then issues a *final written estimate.* Fifth, within 30 days the state pays any additional sum found due.

When a contractor makes additional claims, either of two events signals completion of the settlement procedure: the final written estimate denying the additional claims, or the lapse of 30 days after the final written estimate allowing claims. In either event, section 9(f) declares that the final estimate is conclusive and binding on both parties ''except in the case of gross error.'' By implication rather than expressly, this declaration confines both parties to the described settlement procedure before seeking redress before the Board of Control or the courts. A unilateral effort to bypass the settlement procedure would permit a party to evade submission of his claim to an arbiter whose determination is to some extent binding on him. Thus, the provision by its own terms inferentially binds the parties not to bypass it.

[4]Government Code section 14377 declares: ''Every contract shall provide that the department may make changes in the plans and specifications pursuant to this chapter.''

Government Code section 14391 provides: ''The department may increase or decrease quantities of work to be done under a unit basis contract during the progress of the work.''

Government Code section 14392 provides: ''The department may cause the insertion of provisions in any contract for the performance of such extra work and the furnishing of materials therefor by the contractor as the department requires for the proper completion or construction of the whole work contemplated, if the bidders have equal opportunity of knowing the proposed terms for the extra work.''

■ A basic doctrine of law demands exhaustion of a party's administrative remedies before he files suit, even though no statute makes it a condition of his right to sue. (*Flores* v. *Los Angeles Turf Club, Inc.*, 55 Cal.2d 736, 746-747 [13 Cal.Rptr. 201, 361 P.2d 921] ; *Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 291-293 [109 P.2d 942, 132 A.L.R. 715] ; *Reich* v. *Webb*, 218 Cal.App.2d 862, 868 [32 Cal.Rptr. 803].) Although the rule of exhaustion usually involves statutory procedures, the administrative remedy may be nonstatutory. (See *People* v. *Coit Ranch, Inc.*, 204 Cal.App.2d 52, 58 [21 Cal.Rptr. 875].) The federal courts consistently hold that provisions in federal public works contracts for the administrative settlement of contract disputes preclude resort to the courts until exhaustion of the administrative procedure. (*United States* v. *Joseph A. Holpuch Co.*, 328 U.S. 234, 239-240 [66 S.Ct. 1000, 90 L.Ed. 1192] ; *United States* v. *Hammer Contracting Corp.*, 331 F.2d 173, 175-176; *Southern Shipyard Corp.* v. *United States*, 76 Ct.Cl. 468, cert. den. 290 U.S. 640 [54 S.Ct. 58, 78 L.Ed. 556] ; see Note, 94 L.Ed. 261, 268.)

■ A related doctrine of contract law also defers accrual of such claims. Contract provisions for the extrajudicial settlement of disputes are binding on the parties whether the arrangement is technically a common-law or statutory arbitration or something akin. (*Silva* v. *Mercier*, 33 Cal.2d 704, 708 [204 P.2d 609] ; *Cortez* v. *California Motor Express Co.*, 226 Cal.App.2d 257, 261 [38 Cal.Rptr. 29].) Mandatory contractual remedies must be exhausted before resort to the courts.[5] (See *Gray* v. *La Societe Francaise etc. Mutuelle*, 131 Cal. 566, 571-572 [63 P. 848] ; *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board etc. Workers*, 192 Cal.App.2d 268, 286-287 [13 Cal.Rptr. 446] ; 17A C.J.S., Contracts, § 499(1), p. 752.)

■ The statute of limitations is suspended during the pendency of administrative proceedings forming a necessary prelude to a lawsuit. (*Dillon* v. *Board of Pension Comrs.*, 18 Cal.2d 427, 431 [116 P.2d 37, 136 A.L.R. 800].) Also, when contractual disputes are submitted to arbitration or some

---

[5]Some courts have applied the term ''administrative'' to extra-judicial contractual remedies, impliedly recognizing the parallels between demands for exhaustion of public-administrative and contractual-administrative procedures before suit. (*Transcontinental & Western Air, Inc.* v. *Koppal*, 345 U.S. 653, 660 [73 S.Ct. 906, 97 L.Ed. 1325]; *Barker* v. *Southern Pac. Co.*, 214 F.2d 918, 920; *Griggs* v. *Transocean Air Lines*, 176 Cal. App.2d 843, 846 [1 Cal.Rptr. 803].)

other form of reference, the statute of limitations is usually tolled. (See *Van Hook* v. *Southern Cal. Waiters Alliance,* 158 Cal.App.2d 556, 565 [323 P.2d 212]; *Flinn* v. *Zion,* 37 Cal. App. 110 [173 P. 602]; *Application of Trimount Clothing Co.,* 116 N.Y.Supp.2d 222, affd. 281 App.Div. 656 [117 N.Y. Supp.2d 854]; *National Union Fire Ins. Co.* v. *Ozburn,* 57 Ga.App. 90 [194 S.E. 756]; 54 C.J.S., Limitations of Actions, § 255, p. 287.) ▇▇ Under one doctrine or the other, claims under Teichert's contract with the state did not accrue and the two-year period on filing such claims with the State Board of Control did not start until completion of the settlement procedure established by section 9(f) of the Standard Specifications.[6]

▇▇ Do the complaint's allegations sufficiently allege pendency of the contract settlement procedure past the September 21, 1961, cutoff date? The complaint is quite elliptical at this point, stating only that on May 1, 1961, Teichert returned the "revised final estimate of compensation for work performed" with "exceptions" to the amount allowed; that on April 11, 1963, the state notified Teichert of its refusal "fully" to compensate for the work performed. These allegations cannot be fitted with precision into the terminology of section 9(f) of the Standard Specifications. The complaint refers to a revised final estimate and to exceptions filed by the contractor, while section 9(f) uses such terms as proposed final estimate, claims for additional compensation, semifinal estimate and final written estimate. The complaint permits but does not require the inference that on May 1, 1961, Teichert returned the state's proposed final estimate with claims for additional compensation; that not until April 11, 1963, did the state highway engineer produce a "final written estimate" or its equivalent, finally rejecting the claims.

To buttress the complaint, plaintiff has included seven documents in an appendix to its opening brief on appeal. It seeks judicial notice of these under the asserted authority of *Chas. L. Harney, Inc.* v. *State, supra,* 217 Cal.App.2d 77. The documents consist of four letters from plaintiff to the state

---

[6]Quite aside from the scope of judicial inquiry in this action (a point to be considered, *infra*), it is appropriate to note that the rule of exhaustion applies even though the issues may be tried *de novo* in the lawsuit. (*Collier & Wallis, Ltd.* v. *Astor,* 9 Cal.2d 202, 204-205 [70 P.2d 171]; *Gaderer* v. *Grossmont Union H.S. Dist.,* 124 Cal.App. 686, 688-689 [13 P.2d 401].) Thus invocation of the exhaustion doctrine signifies nothing, one way or the other, on the scope of trial court inquiry.

and three letters from the state to plaintiff, some of which are accompanied by lists of work and material.

As indicated by the *Harney* case (217 Cal.App.2d at pp. 86-87), a litigant cannot always rely upon judicial notice to fill gaps in his pleading. The *Harney* case, like the present, was a suit for additional compensation on a state highway construction contract. There the court took judicial notice against the pleader, not for him. (See *Watson* v. *Los Altos School Dist.*, 149 Cal.App.2d 768, 771-772 [308 P.2d 872]; 2 Witkin, Cal. Procedure (1954) p. 1185.) The judicially noticed documents in *Harney* had been presented to the trial court; here apparently they had not. In *Harney* the items consisted of statutory documents (Board of Control claims) and communications from the state. Here they include four letters from the private contractor *to* the state. Possibly, among the precedents, there are some which confer judicial notice upon private letters reposing in public files. Substantial justice does not require it here. If writings form a necessary link in a cause of action, they should be quoted in the complaint, set out *in haec verba* or incorporated by reference. (1 Chadbourn, Grossman & Van Alstyne, California Pleadings, §§ 834-837, pp. 757-766.) Except in response to specific demands of law, a litigant should comply with the same pleading rules in litigating with public as with private adversaries. So far as possible, a pleading should present the same appearance to the trial judge as to the appellate court.

Absent judicial notice, the complaint, although uncertain, reveals a strong possibility that Teichert filed additional claims in response to the state highway engineer's proposed final estimate and that the "final written estimate" (or its equivalent) rejecting these claims was not issued until after the September 21, 1961, cutoff date. The pleading was vulnerable to a special demurrer, possibly even to a general demurrer but with leave to amend. Had section 9(f) of the Standard Specifications been placed before the trial court, denial of leave to amend would have been an abuse of discretion. Plaintiff should now have an opportunity to amend in order to allege facts—if available—demonstrating that the claim settlement procedure provided by the contract was not completed until after September 21, 1961.

The state, however, draws a distinction between claims "under the contract" and those for breach of contract. It construes section 9(f) to embrace only the former. The

state's position is that only the sixth count of the complaint is eligible for consideration as a claim "under" the contract; that the remaining 15 counts are claims for breach of contract, misrepresentation or breach of warranty, hence not covered by the settlement procedure of section 9(f). The state relies on *Fidelity & Deposit Co.* v. *Claude Fisher Co.*, 161 Cal.App.2d 431 [327 P.2d 78], which involved this identical provision of the state's highway construction contracts and the identical two-year period of limitations on filing Board of Control claims.

In the *Fisher* case the state had to replace Fisher, the original contractor, before completion of the project. Later, after another contractor completed the work, Fisher submitted a damage claim to the state highway engineer claiming breach of contract. Four years after being ousted from the job, Fisher filed a claim with the State Board of Control, which rejected it. His bonding company sued him for the damages it had paid the state. Fisher cross-complained against the state, urging that the two-year statute of limitations did not commence until the state highway engineer rejected his breach of contract claim. The court held to the contrary. In the course of its opinion the court voiced dicta inferring that the statute of limitation continues to run on breach of contract claims notwithstanding pendency of the administrative settlement proceeding.[7]

We do not agree with the *Fisher* dicta. Factually there is little parallel between the *Fisher* case and the present. In *Fisher* the contractor had to be removed from the job, then

---

[7] In the *Fisher* case, 161 Cal.App.2d at pages 437-438, the court states: "It must be assumed that the Claude Fisher Company was, from the beginning, fully informed with respect to the mandatory provisions of section 16044 [predecessor of section 644] of the Government Code requiring the filing of a claim within two years after it first arose or accrued, and that an action on such claim shall be brought within six months after rejection. Appellant was likewise fully informed as to the facts. If appellant, with this knowledge, elects to ignore the plain provisions of the law and to take a chance at some ultimate settlement or other happy determination, it must, like all litigants, accept the consequences of its action.

". . . Since the appellant's cross-complaint alleges breach of contract on the part of the state, allegations indicating that appellant at that time considered the contract at an end for all purposes can hardly be overlooked in considering when its claim arose.

". . . . . . . . . .

"'Incidentally, it may be noted that insofar as appellant's allegations of breach of contract are concerned, any such cause of action must have come into being, if ever, long before, and independent of any determination of the cost of completing the job by the state. There should be no confusion between these two matters.'"

resorted to the contract settlement procedure in a belated attempt to collect damages. In the present case, assuming the pleaded facts to be true, the contractor stayed on the job and completed it despite unforeseen expenses. Although it now pursues certain of its claims on a breach of contract theory, the damages are alleged to be the actual cost of completing the project for which it contracted.

The state also relies on *Boomer* v. *Abbett*, 121 Cal.App.2d 449 [263 P.2d 476], which construed a federal public works contract providing for the settlement of contract disputes by the federal contracting officer. Citing Court of Claims decisions, the *Boomer* case held that the federal contracting officer's authority was limited to disputes arising *under the contract* and did not extend to disputes over a *breach of contract*. (121 Cal.App.2d at p. 462.) The *Boomer* case supplies a verbal analogy, but one of slight interest here. The clause in question covered administrative settlement of disputes arising during construction, not a provision for the settlement of financial claims existing upon completion. Nor did the *Boomer* case involve the contractor's position vis-a-vis the statute of limitations pending the slow grinding out of the contracting officer's settlement proceeding. According to the allegations of the present complaint, the departmental deliberations may have occupied as much as 23 months.

In considering the scope of the departmental adjudicating procedure, indiscriminate exclusion of claims labeled "breach of contract" will not do. The label covers a wide variety of damage items, and valid distinctions should be drawn. There is a distinction between a claim for breach of contract after wrongful termination and a claim existing after full performance of the contract. *Fidelity & Deposit Co.* v. *Claude Fisher Co., supra,* illustrates this distinction. (Cf. *Garson* v. *Division of Labor Law Enforcement,* 33 Cal.2d 861, 864-865 [206 P.2d 368]; *B. L. Metcalf General Contractor, Inc.* v. *Earl Erne, Inc.,* 212 Cal.App.2d 689, 694 [28 Cal.Rptr. 382].) Breach of contract claims pressed after project completion may consist of business losses not representing any contribution to the project; on the other hand, they may represent increases in labor and material costs actually expended on the job. The latter distinction is pointed out in such decisions as *B. C. Richter Contracting Co.* v. *Continental Cas. Co.,* 230 Cal.App.2d 491, 498-499 [41 Cal.Rptr. 98], and *Continental Casualty Co.* v. *Schaefer,* 173 F.2d 5, 9; see also cases cited 85 A.L.R.2d at pp. 235-236.)

█ In spirit the settlement procedure of the Standard Specifications seeks the orderly solution of unsettled financial problems existing on project completion. Unless closely restricted by their own terms, provisions for administrative settlement and extrajudicial arbitration are construed broadly. (*Garson* v. *Division of Labor Law Enforcement, supra,* 33 Cal.2d at pp. 865-866; *B. L. Metcalf General Contractor, Inc.* v. *Earl Erne, Inc., supra,* 212 Cal.App.2d at p. 694; *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board etc. Workers, supra,* 192 Cal.App.2d at pp. 275-277.) Overnice interpretation would require the contractor to predict at his peril the precise legal theory supporting ultimate recovery. He should not be placed in the dilemma of awaiting "jurisdictional" decisions of the contracting authority while the clock of limitations ticks in his ear. Nor should he be forced to fragmentize the controversy, running to court with pieces of the dispute as insurance against the bar of limitations. The provision should be construed to prevent lawsuits, not encourage them.

█ Taking section 9(f) by its four corners, we find no design to exclude financial claims which might ultimately be litigated on a breach of contract theory. In broad terms the first paragraph refers generally to the engineer's estimate of "quantities of work done under the contract and the value of such work . . . ." In effect, the estimate covers whatever work was performed in order to complete the project. The contractor's responsive claim for money "due under the contract" coextends with the engineer's estimate. Like the estimate, the claim may cover costs the contractor incurred in order to complete the project according to the state's specifications. That some of these costs may be ultimately litigated on a breach of contract or any other available theory does not exclude them from the settlement procedure.

█ The present complaint seeks recovery of six separate items of money on various theories of law. On the face of the complaint, each item represents an extra cost of completing the project for which plaintiff had contracted. On the face of the matter each of these six claims, whether tenable or not, was within the scope of the administrative settlement procedure established by section 9(f) of the Standard Specifications. Thus if these claims were pending before the state highway engineer past the September 21, 1961, cutoff date, they were not barred by the statute of limitations when plaintiff filed its Board of Control claim. Plaintiff should now have an opportunity to amend its complaint accordingly.

 The first count requires special consideration at this point. Seeking recovery for "breach of warranty and misrepresentations," it alleges that the state furnished plaintiff incorrect information as to soil conditions. This count is apparently modeled on *Souza & McCue Constr. Co.* v. *Superior Court,* 57 Cal.2d 508 [20 Cal.Rptr. 634, 370 P.2d 338]. In that case a public works contractor sought damages from the contracting agency, alleging knowing misrepresentation of adverse soil conditions at the job site. The court sustained the pleading, stating (57 Cal.2d at pp. 510-511) : "A contractor of public works who, acting reasonably, is misled by incorrect plans and specifications issued by the public authorities as the basis for bids and who, as a result, submits a bid which is lower than he would have otherwise made may recover in a contract action for extra work or expenses necessitated by the conditions being other than as represented. [Citations.] This rule is mainly based on the theory that the furnishing of misleading plans and specifications by the public body constitutes a breach of an implied warranty of their correctness. The fact that a breach is fraudulent does not make the rule inapplicable. [Citations.] [The contractor's] proposed pleading states causes of action in contract on the basis of the alleged fraudulent breach by [the contracting agency]."

Plaintiff's first count differs from the *Souza* pleading by omitting allegations essential to plead fraud, such as knowledge of falsity and intent to deceive. Although it speaks of misrepresentation, a misrepresentation may be innocent as well as fraudulent. (*Crocker-Anglo Nat. Bank* v. *Kuchman,* 224 Cal.App.2d 490, 494-495 [36 Cal.Rptr. 806].) Thus the first count is framed on a theory purely contractual. That the theory is breach of an implied warranty does not exclude the claim from the category of those arising "under the contract." Plaintiff is not seeking unliquidated damages for a tortious deceit. (Cf. *Boomer* v. *Abbett, supra,* 121 Cal.App.2d at pp. 462-463.) If plaintiff's proof demonstrates the implied warranty, it would be implied as a term of the contract with the state. The damages would consist of the extra cost of completing the very project which formed the subject of the contract. (*Souza & McCue Constr. Co.* v. *Superior Court, supra,* 57 Cal.2d 508; *Gogo* v. *Los Angeles County Flood Control Dist.,* 45 Cal.App.2d 334, 341 [114 P.2d 65].) Hence, relative to the statute of limitations, the first count of Teichert's pleading has the same status as the others.

In view of the possibility of an affirmance on a theory other than that utilized in the trial court, the parties have debated the substantive merits of the complaint. The debate has not been sufficiently extensive and the pleading is not in such condition as to warrant appellate disposition of plaintiff's 16 counts. After remand the parties and the trial court will face the practical problem of formulating pleadings to define the issues pending their delineation in a pretrial order. In order to assist in this process we shall make some general observations.

Some of the counts fail to plead adequate grounds of relief but appear to represent potentially tenable causes of action. Plaintiff entered into a single construction contract with the state. Seeking recovery of six items of damage claimed in fulfillment of this one contract, it has pleaded 16 separate counts. California practice permits but does not necessitate such proliferation. ■■■ Generally, the breach of one contract and a failure to pay according to its terms, create one cause of action even though several items of damage are claimed. (See *California Trust Co.* v. *Cohn,* 214 Cal. 619, 629 [7 P.2d 297]; *Messer* v. *Hibernia Sav. etc. Society,* 149 Cal. 122, 127 [84 P. 835]; 1 Chadbourn, Grossman Van Alstyne, *op. cit.,* § 761, pp. 653-660.) ■■■ While a pleader should invariably have one or more theories of recovery *in mind* when he frames the allegations of his complaint, he need not multiply the counts into as many theories as he can conceive.

■■■ In entering into its contract with the state, the contractor bound itself to section 9(f) of the Standard Specifications, with its provision that the final written estimate of the state highway engineer would be ''conclusive and binding . . . except in the case of gross error.'' Nowhere does the complaint allege gross error or its equivalent. Plaintiff may not raise section 9(f) as a shield against limitations and ignore its impact on the scope of judicial inquiry. As we noted earlier, a contractual provision for the settlement of disputes is binding on the parties. (*Silva* v. *Mercier, supra,* 33 Cal.2d at p. 708.) The general rule is that an extrajudicial determination made final and conclusive by the contract will be overthrown only for fraud, bad faith or mistake. (*Brown* v. *Aguilar,* 202 Cal. 143, 151 [259 P. 735]; *Hagginwood Sanitary Dist.* v. *Downer Corp.,* 179 Cal.App.2d 756, 760 [3 Cal. Rptr. 873]; 17A C.J.S., Contracts, § 498(8), pp. 739-745.) The rule extends to financial determinations. (See *California*

*Sugar etc. Agency* v. *Penoyar,* 167 Cal. 274, 279 [139 P. 671]; *C. J. Wood, Inc.* v. *Sequoia Union High School Dist.,* 199 Cal.App.2d 433, 435-436 [18 Cal.Rptr. 647]; *Kinkle* v. *Fruit Growers Supply Co.,* 63 Cal.App.2d 102, 107-108 [146 P.2d 8].)

Standard collections of judicially defined words and phrases do not include the phrase "gross error." While abstract definition is possible at this time, a better definition of the phrase *as used in this particular contract* will result in the context of a body of evidence, that is, after trial.[8] Suffice it to say here that gross error or some other adequate ground for nullifying the engineer's determination is a vital element in the statement of a claim for relief from that determination. That element does not yet appear in the complaint.

Plaintiff's principal claim arises from the alleged overexpenditure of $546,204.95 for the expense caused by the necessity of drying and compacting unexpectedly moist earth. Certain contract provisions become particularly relevant at this point. Section 2(a) of the Standard Specifications is an exculpatory provision which imposes on bidders the responsibility for site examination; warns that subsurface data in the state's hands is made available to bidders only for their convenience; declares that the state assumes no responsibility for the accuracy of such data. Section 5(a) of the Standard Specifications declares that the state highway engineer's decisions as to acceptability of performance and as to compensation shall be final. Section 6(b) of the Special Provisions requires the issuance of a contract change order approved by the state highway engineer as a condition of changes in the work. Section 6(b)(4) states that "new and unforeseen" work will be classed as "extra work" and the contractor will not be paid for extra work in the absence of an

---

[8]While eschewing any attempt to forecast the ultimate definition of "gross error," we call the parties' attention to authorities equating "gross mistake" with fraud, constructive fraud, bad faith, or a failure to exercise honest judgment. (*American-Hawaiian etc. Co.* v. *Butler,* 165 Cal. 497, 513 [133 P. 280, Ann.Cas. 1916C 44]; *C. J. Wood, Inc.* v. *Sequoia High School Dist., supra,* 199 Cal.App.2d at p. 436; 17A C.J.S., Contracts, § 498(8), pp. 747-748; see *United States* v. *Carlo Bianchi & Co.,* 373 U.S. 709, 713-714 [83 S.Ct. 1409, 10 L.Ed.2d 652]; *United States* v. *Wunderlich,* 342 U.S. 98, 101-103 [72 S.Ct. 154, 96 L.Ed. 113] (dissents of Douglas, J. and Jackson, J.); *Ripley* v. *United States,* 223 U.S. 695, 701-702 [32 S.Ct. 352, 56 L.Ed. 614].) Some charges of mistake or error on the part of the designated arbiter revolve around disputed legal interpretations of contract language. (See cases cited 17A, C.J.S., p. 742, fns. 79.5-79.15.)

approved change order or other written order of the engineer.[9]

From the authorities cited in the briefs it is possible to draw some abstract propositions of law, such as the following: If the contracting agency furnishes inaccurate project information, such as soil reports, *as a basis for bids,* it may be liable for damages on a breach of warranty theory. (*Souza & McCue Constr. Co.* v. *Superior Court, supra,* 57 Cal.2d at pp. 510-511; *Gogo* v. *Los Angeles County Flood Control Dist., supra,* 45 Cal.App.2d at p. 338.) If the agency makes geological data available under a disclaimer of responsibility, the contractor bears any loss occasioned by unexpected conditions. (*Thomas Kelly & Sons, Inc.* v. *City of Los Angeles,* 6 Cal.App.2d 539, 542-543 [45 P.2d 223]; *Rocell Constr. Co.* v. *State,* 208 Misc. 364 [141 N.Y.Supp.2d 463].) The contracting agency's disclaimer does not protect it from liability for deliberate misrepresentation or concealment. (*United States* v. *Spearin,* 248 U.S. 132, 136-137 [39 S.Ct. 59, 63 L.Ed. 166]; *Jackson* v. *State,* 210 App.Div. 115 [205 N.Y.Supp. 658], affd. 241 N.Y. 563 [150 N.E. 556].)

---

[9]Section 6(b) of the Special Provisions states in part:

"(b) *Changes.*—The Department reserves the right to make such alterations, deviations, additions to or omissions from the plans and specifications, including the right to increase or decrease the quantity of any item or portion of the work or to omit any item or portion of the work, as may be deemed by the Engineer to be necessary or advisable and to require such extra work as may be determined by the Engineer to be required for the proper completion or construction of the whole work contemplated.

"Any such changes will be set forth in a contract change order which will specify, in addition to the work to be done in connection with the change made, adjustment of contract time, if any, and the basis of compensation for such work. A contract change order will not become effective until approved by the Engineer.

"Upon receipt of an approved contract change order, the Contractor shall proceed with the ordered work. If ordered in writing by the Engineer, the Contractor shall proceed with the work so ordered prior to actual receipt of an approved contract change order therefor.

". . . . . . . . . .

"(4) *Extra Work.*—New and unforeseen work will be classed as extra work when determined by the Engineer that such work is not covered by any of the various items for which there is a bid price or by combinations of such items, or in the event portions of such work are determined by the Engineer to be covered by some of the various items for which there is a bid price or combinations of such items, the remaining portion of such work will be classed as extra work.

"The Contractor shall do such extra work and furnish such material and equipment therefor upon receipt of an approved contract change order or other written order of the Engineer, and in the absence of such approved contract change order or other written order of the Engineer he shall not be entitled to payment for such extra work. . . ."

Viewed by such abstract standards, the first five counts of plaintiff's pleadings are deficient. They do not allege facts to demonstrate that the state's soil data was furnished to bidders as a basis for computing bids, that there was deliberate misrepresentation, or that the state warranted accuracy of the data. Indeed, the exculpatory provisions of section 2(a) of the Standard Specifications demonstrate that the state made no such warranty.

In considering the predicament of the public works contractor who encounters latent, unanticipated geological conditions, California courts have not had occasion to peer beyond the relatively simple points made in the *Souza* case, where the data had been warranted, and the *Kelly* case, where it had not. A substantial body of law has developed in other jurisdictions, particularly in connection with federal public works contracts. (See Note, Public Contract — Changed Conditions, 85 A.L.R.2d 211-237; Gaskins, *Changed Conditions and Misrepresentation of Subsurface Materials as Related to Government Construction Contracts,* 24 Fordham L.Rev. 588-596.) Federal public works contracts and those of some states frequently contain a ''changed conditions'' clause to help bidders forego a financial margin of safety in their bids. Such a clause recognizes possible encounter with unknown physical conditions differing from those generally recognized as inherent in the project and permits an equitable adjustment in the contract price where such an encounter occurs. The clause bears analogies to the ''new and unforeseen work'' provision in section 6(b)(4) of the state's Special Provisions (fn. 9, *supra*). Decisions hold that contract provisions imposing responsibility for subsurface investigations on the contractor and disclaiming liability on the part of the contracting agency do not prevent recovery of extra compensation under the ''changed conditions'' clause. Such provisions do not ''mean that all considerations of equity and justice are to be disregarded, and that a contract to do a useful job for the Government is to be turned into a gambling transaction.'' (*Peter Kiewit Sons' Co.* v. *United States,* 109 Ct.Cl. 517 [74 F.Supp. 165, 168]; see also *Loftis* v. *United States,* 110 Ct.Cl. 551 [76 F.Supp. 816, 825-826]; *Hirsch* v. *United States,* 94 Ct.Cl. 602, 637; *Thomsen-Abbott Constr. Co.* v. *Wausau,* 9 Wis.2d 225 [100 N.W.2d 921]; additional cases cited 85 A.L.R.2d at pp. 218-220.) The ''changed conditions'' clause permits recovery when the geological problem is latent and denies it when the contractor's

predicament stems from a failure to inform himself of reasonably observable physical factors. (*Leal* v. *United States,* 276 F.2d 378, 383-384; *Baluner Constr. Co.* v. *United States,* 94 Ct.Cl. 503; *Morrison* v. *State Highway Com.,* 225 Ore. 178 [357 P.2d 389, 85 A.L.R.2d 203].) Inaccuracies in physical data furnished to bidders may have less relevance than the latent, unexpected and unusual character of the subsurface condition. (See *Ragonese* v. *United States,* 128 Ct.Cl. 156 [120 F.Supp. 768, 770-771].) At least one decision suggests that bidders should not be held to more prescience than the contracting authority's engineers. (*Jos. Meltzer, Inc.* v. *United States,* 111 Ct.Cl. 389 [77 F.Supp. 1018, 1021].) Although the contract imparts finality to the contracting officer's refusal to make an equitable adjustment for unforeseen conditions, the courts will set aside his decision if it was arbitrary or grossly erroneous. (See *United States* v. *Carlo Bianchi & Co., supra,* 373 U.S. at pp. 713-714; *Ripley* v. *United States, supra,* 223 U.S. at pp. 701-702; *Rego Building Corp.* v. *United States,* 99 Ct.Cl. 445, 480-483.) The officer is not to act as the representative of one side but reasonably and with regard for the rights of both parties. (*Ripley* v. *United States, supra,* 223 U.S. at p. 702.)

Such are some of the doctrines applicable in suits for extra compensation under a "changed conditions" clause. Plaintiff's present pleading does not allege facts adequate to evoke these doctrines. Absent such allegations, it is pointless to debate or decide whether, as a matter of law, the contract forms of the California Division of Highways permit results paralleling those reached under the "changed conditions" clause in other jurisdictions. The complaint suggests the possible existence of facts which, if pleaded, might permit plaintiff to stand or fall by such doctrines. If such facts are available, plaintiff should have an opportunity to amend in order to allege them.

 Other counts of the complaint seek recovery for various kinds of extra work caused by contingencies during construction. Section 6(b) of the Special Provisions of the contract (fn. 9, *supra*) distinctly requires a change order or written authorization from the state highway engineer as a prerequisite of compensation for extra work. There is no allegation in any of these counts that the state highway engineer issued change authorizations for these particular items. Attempting to jump the hurdle posed by the apparent absence of change authorizations, plaintiff resorts to three

alternative legal theories: (1) that the contract itself requires payment for extra work; (2) that the work was performed pursuant to "executed oral modifications" of the contract; (3) that plaintiff did the work relying on defendants' promises and the state is now estopped to deny compensation.

In their present form these counts fail to state tenable claims for relief. The theory of recovery under the express contract is frustrated by the provision prohibiting extra compensation for extra work performed without the authority of the state highway engineer. With the possible exceptions noted earlier, compliance with a provision for contract change orders is indispensable to recovery for increased or changed work. (*Bares* v. *City of Portola,* 124 Cal.App.2d 813, 819 [269 P.2d 239]; *Thomas Kelly & Sons, Inc.* v. *City of Los Angeles, supra,* 6 Cal.App.2d at pp. 542-543; 43 Am.Jur., Public Works and Contracts, § 114, p. 858.) Plaintiff has pointed to no contract provision superseding section 6(b) or permitting it to be ignored. In its closing brief, plaintiff says that it seeks judicial review of the state's arbitrary and erroneous refusal to issue change orders. The complaint reveals no such purpose. It does not even allege that change orders were requested, let alone refused arbitrarily or through gross error.

The "executed oral modification" theory is drawn from Civil Code section 1698, which states: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." Permissibility of an oral modification of a public works contract let on competitive bidding is at least open to serious question. The complaint does not allege that any of the "oral modifications" was approved by the state highway engineer. ▮▮▮ Subordinate field personnel could not waive the mandatory contract requirement that ordered changes be approved by the state highway engineer (*Thomas Kelly & Sons, Inc.* v. *City of Los Angeles, supra,* 6 Cal.App.2d at p. 543; *Contra Costa Constr. Co.* v. *City of Daly City,* 48 Cal.App. 622 [192 P. 178]; 43 Am.Jur., Public Works and Contracts, § 119, p. 862.) As these counts are presently framed, the contract itself belies the alleged modifications.

The estoppel theory is fruitless. ▮▮▮ A public works contractor cannot sidestep a contract demand for change orders by asserting that he did extra work in reliance on statements, however generous, of persons in the employ of the

contracting agency. (*Mullan* v. *State of California,* 114 Cal. 578, 587 [46 P. 670, 34 L.R.A. 262]; *Thomas Kelly & Sons, Inc.* v. *City of Los Angeles, supra,* 6 Cal.App.2d at p. 543.) Promissory estoppel requires a promise on which reliance may be had. (*Bard* v. *Kent,* 19 Cal.2d 449 [122 P.2d 8, 139 A.L.R. 1032].) Plaintiff's own contract demanded official change authorizations as a precondition of extra work for extra compensation. In order to demonstrate justified reliance on other kinds of representations or promises, plaintiff would have to plead and prove ignorance of its own contract.

The judgment is reversed with directions to permit plaintiff to amend its complaint within a reasonable time should it so elect. ▆▆▆ Had plaintiff brought section 9(f) of the Standard Specifications to the trial court's attention, the ruling on the question of limitations might have been favorable to plaintiff and this appeal avoided. Under these circumstances fairness precludes imposition of plaintiff's appeal costs on the state. Each party will bear its own costs on appeal.

Pierce, P. J., and Regan, J., concurred.