[S.F. No. 22958. In Bank. May 17, 1973.]

BARBARA CAMPBELL et al., Plaintiffs and Appellants, v.
ELEANOR GRAHAM-ARMSTRONG et al., Defendants and Appellants.

COUNSEL

LaCroix & Schumb and Joseph G. Schumb, Jr., for Plaintiffs and Appellants.

William M. Siegel, County Counsel, and Leland D. Stephenson, Deputy County Counsel, for Defendants and Appellants.

OPINION

McCOMB, J.—Defendants appeal from a judgment of the Superior Court of Santa Clara County granting a peremptory writ of mandate compelling defendant governing board of the Campbell Union School District to reclassify plaintiffs as full-time kindergarten teachers for certain years prior to the 1965-1966 school year, to pay them back salaries for the school year 1964-1965, and to pay plaintiffs, or the State Teachers' Re-

tirement System, any sums necessary so that they will be entitled to all retirement benefits they would otherwise have been entitled to receive had they been classified as full-time kindergarten teachers. Plaintiffs appeal from that portion of the judgment denying back salaries for years preceding 1964-1965.

*Facts:* Each of the plaintiffs was employed by the school district as a part-time employee to teach a one-session kindergarten class requiring 180 minutes of classroom instruction per day. Their salaries were substantially below the $6,000 minimum salary set by section 13525 of the Education Code for full-time employees, as well as the salaries set by defendant governing board for full-time employees, which latter salaries exceeded the minimum salary required by the code.[1] A two-session kindergarten teacher was required to teach each day two classes of 150 minutes each and was paid on a full-time basis. In addition to the appropriate salary according to the governing board's salary schedule, they were paid a 9 percent bonus for teaching two classes.

Plaintiff Campbell began her employment with the district in the 1962-1963 school year. Plaintiff Petersen was first employed for the 1963-1964 school year, and plaintiff D'Attilo began working for the district in the 1964-1965 school year. According to plaintiffs, they first discovered they were entitled to classification and salary as full-time employees in January 1966. Consultations with field representatives for the California Teachers Association and with the superintendent of schools resulted in plaintiffs being reclassified as full-time employees for the school year 1965-1966.

In May 1966, plaintiffs wrote to the superintendent of schools requesting reclassification to a full-time status for prior years and adjustments for sick leave, retirement, and back pay. According to plaintiffs, the governing board delayed making a decision upon their request awaiting advice of the county counsel. On December 4, 1967, plaintiffs filed their petition for a writ of mandate in the superior court. After trial, the court granted a peremptory writ ordering payment of back wages for the school year 1964-1965 but held that recovery for prior years was barred by the statute of limitations.

*Questions:* First. *Is mandamus an appropriate remedy?*

*Yes.* ■ Defendants contend that plaintiffs were entitled to money damages only and that they therefore should have brought an action at

---

[1]All references hereinafter made to code sections will be to the Education Code unless otherwise designated.

law, the remedy of mandamus being unavailable to them under the circumstances. It will be noted, however, that in addition to back salary, plaintiffs sought reclassification as probationary teachers for the periods in question as a basis for being entitled to the back salary and proper credit for retirement benefits. Accordingly, mandamus was an appropriate remedy. (*Fry* v. *Board of Education,* 17 Cal.2d 753 [112 P.2d 229].)

Second. ■ *Does plaintiffs' agreement to accept part-time employment as one-session kindergarten teachers at part-time salaries preclude them from being reclassified as full-time kindergarten teachers entitled to be paid as such?*

*No.* Defendants contend that by agreeing to teach one session of kindergarten per day at part-time salaries, plaintiffs have waived their right to be paid as full-time employees. As will hereinafter appear, however, such a waiver is not permissible under the applicable statutory provisions.

Section 13503 provided, in part: "Every person employed by the district in a position requiring certification qualifications in a day school of the district *for not less than the minimum schoolday* for each day the schools of the district are maintained during the school year is a full-time employee and his compensation shall be fixed accordingly." (Italics added.) Section 13525 required the governing board of each school district to "pay to each person employed in a day school of the district for full time in a position requiring certification qualifications . . . an annual salary of not less than six thousand dollars ($6,000)." Section 13525 further provided: " 'Full time' means not less than the minimum schoolday for each day the schools of. the district are maintained during the school year." Section 11003 provided: "The minimum schoolday for pupils of kindergartens . . . is 180 minutes inclusive of recesses. . . ."[2]

In *Heckley* v. *Board of Education,* 53 Cal.2d 218 [1 Cal.Rptr. 4, 347 P.2d 4], this court held that the statutory scheme provides for payment of full-time salary to a one-session kindergarten teacher but that the teacher there involved, by accepting her part-time contract, waived the provisions guaranteeing a full-time salary and agreed to the rules and regulations which the school district had adopted fixing the time and duties for full-time positions.

In *Heckley,* the teacher had refused a position teaching a full day as

[2]The provision with respect to the length of the minimum school day for pupils in kindergartens is now included in section 11301.

fixed by the board of education (8:45 a.m. to 3:30 p.m.) and at her own request was employed to teach only a morning session of the kindergarten class (9 a.m. to 12 noon). None of the plaintiffs here refused to teach two sessions, and *Heckley* is therefore distinguishable from the present case. More importantly, however, shortly after the decision in *Heckley* was filed, section 13338.1 was enacted (Stats. 1961, ch. 1071, p. 2801, § 1), providing: "Except as provided in Sections 13406 [waiver of hearing by permanent employee] and 13448 [rights of terminated permanent employee], *any contract or agreement,* express or implied, made by any employee *to waive* the benefits of this chapter or any part thereof *is null and void.*

"Notwithstanding provisions of this or any other section of this code, governing boards of school districts may employ persons in positions requiring certification qualifications on less than a full-time basis." (Italics added.)

Contrary to defendants' contention, the second paragraph of section 13338.1 does not serve to preserve the specific holding of *Heckley*. Rather, the only reasonable interpretation is that the purpose of such paragraph is to insure that part-time employment (defined as less than the minimum school day) is not outlawed by inference.

Third. ■ *Have plaintiffs established that they were full-time employees by showing that they taught for the minimum school day as prescribed by the Education Code?*

*Yes.* ■ The matter of the classification of a teacher is determined by state law (*Fry* v. *Board of Education, supra,* 17 Cal.2d 753); and under section 13503 a teacher who is assigned to teach at least the minimum school day is considered to be a full-time employee. As hereinabove pointed out, the minimum school day for pupils of kindergartens is 180 minutes; and plaintiffs taught for that length of time each day.

Defendants point out that the minimum prescribed by section 11003 is the school day for *pupils* and that in order to be regarded as full-time employees, plaintiffs are required to show that they served for the length of the full day established by the governing board for full-time teachers to be on duty at the school. The governing board is authorized by section 10952, subject to statutory provisions, to fix the length of the school day; and defendants point out that two-session kindergarten teachers are required to be on duty from 8:30 a.m. to 3:45 p.m. under rules laid down by the governing board, arguing that a kindergarten teacher who is not required to be on duty that long is not a full-time employee. The same

rules, however, require that one-session kindergarten teachers arrive at the school at 8:30 a.m.; that they teach from 9 a.m. to 12 noon (180 minutes); that the departure time for such teachers shall be at the option of the principal after ample planning has been completed for future sessions; and that such teachers "are expected to attend pre-school orientations, attend monthly workshops, and participate in PTA or other parent organizations just as though they were full-time personnel." Plaintiffs observed such requirements.

As hereinabove indicated, the fact that plaintiffs were required to teach for the minimum school day prescribed by the code constituted them full-time employees. In any event, they were on duty for the additional time required of them under the rules laid down by the governing board and, accordingly, unquestionably qualify as full-time employees.

In *Meyer* v. *Board of Trustees,* 195 Cal.App.2d 420 [15 Cal.Rptr. 717], the plaintiff, a teacher, sought to establish that he had acquired tenure. Under the code, he was entitled to tenure if he had taught for three complete consecutive school years in a district having an average daily attendance of 850 or more. The district in which he taught maintained a senior high school and junior high schools, including classes in the seventh and eighth grades. The code sections defining "average daily attendance" differentiated in the number of units given for average daily attendance by pupils in elementary schools and the number of units given for average daily attendance by pupils in high schools, thus affecting the support given by the state for the cost of maintaining those parts of the school system, and directed that credit for the average daily attendance for the seventh and eighth grades be given to the elementary school district. If the district in which plaintiff taught was given credit for the average daily attendance of the seventh and eighth grades, it had an average daily attendance of more than 850; but if the average daily attendance of the seventh and eighth grades was deducted, the district had an average daily attendance of less than 850.

The Court of Appeal indicated that the above-mentioned provisions were enacted for fiscal purposes and held that the definitions therein contained did not apply to the tenure provisions. The Court of Appeal emphasized that the language showed clearly that the purpose involved a fiscal concept, referring, as it did, to the units of average daily attendance credited to the district for a fiscal year. The language of section 11003, with which we are here concerned, on the other hand, was not so limited. In any event, even though the provisions of section 11003 applied with respect to the fiscal operation of the school system, the fact

that teachers' salaries represent a substantial portion of the cost of supporting the public schools makes it logical to relate the definition of "minimum schoolday" contained in ·section 11003 to the requirement that any teacher serving for the minimum school day be paid as a full-time employee.

Fourth. *In awarding back salaries to plaintiffs, should the trial court have made the award on the basis of the difference between the salaries paid to them and the minimum salary prescribed for full-time teachers by section 13525, rather than the difference between the salaries paid to them and the salaries prescribed by the salary schedule adopted by the governing board?*

*No.* Contrary to defendants' contention, the trial court's action in this respect was proper. Section 13502 provides: "The governing board of any school district shall fix and order paid the compensation of persons in public school service requiring certification qualifications employed by the board unless otherwise prescribed by law." Under section 13506, the governing board could make uniform allowances in any salary schedule for years of training and years of service. Whether or not the governing board would have been justified in setting for full-time kindergarten teachers teaching only one session salaries equal at least to the statutory minimum but less than the salaries for full-time kindergarten teachers teaching two sessions is not in issue here, as there is no evidence to show that the governing board attempted to make any such differentiation. Since the determination of the salaries to be paid is, subject to the statutory restrictions referred to, a matter for the governing board, there is no basis for holding that plaintiffs are entitled only to the difference between what was actually paid to them and the minimum prescribed by the code.[3]

*Fifth. Are plaintiffs entitled to recover back salaries for years prior to the school year 1964-1965?*

*No.* The trial court concluded that the three-year period of limitation prescribed by section 338, subdivision 1, of the Code of Civil Procedure (pertaining to an action upon a liability created by statute)

---

[3]It is interesting to note that in 1967 section 13503.1 was added to the code (Stats. 1967, ch. 1224, p. 2990, § 2), providing that any person who was employed in a position requiring certification qualifications and served a lesser period of time than the majority of such employees in the same grades of the district were required to serve could specifically contract to serve as a part-time employee. The section, however, was not enacted until long after the time here involved; and the provision was deleted by amendment made the following year.

was applicable and limited recovery to back salaries due for the school year 1964-1965. Plaintiffs did not have written contracts, and the trial court applied the proper statute of limitations.

Plaintiffs contend that the limitation prescribed by section 338, subdivision 4, of the Code of Civil Procedure, which permits the filing of an action within three years after discovery of fraud or mistake, is here applicable. That statutory provision, however, does not apply. No fraud is asserted; and the mistake, if any, related solely to the construction of a statute, a matter of law and not of fact.

Plaintiffs further now contend that the running of the statute of limitations was suspended in May 1966 when they filed their claim with the governing board. The exhaustion of administrative remedies will suspend the statute of limitations even though no statute makes it a condition of the right to sue. (*A. Teichert & Son, Inc.* v. *State of Cal.*, 238 Cal.App.2d 736, 746 [48 Cal.Rptr. 225] [disapproved on other grounds in *E. H. Morrill Co.* v. *State of California*, 65 Cal.2d 787, 792 (56 Cal.Rptr. 479, 423 P.2d 551)].) In *Myers* v. *County of Orange*, 6 Cal.App.3d 626, 634 (5) [86 Cal.Rptr. 198], it is said: "When an injured person has several legal remedies and, reasonably and in good faith, pursues one designed to lessen the extent of the injury or damages, the statute of limitations does not run on the other while he is thus pursuing the one." (See also *Tu-Vu Drive-In Corp.* v. *Davies*, 66 Cal.2d 435, 437 [58 Cal.Rptr. 105, 426 P.2d 505]; *County of Santa Clara* v. *Hayes Co.*, 43 Cal.2d 615, 617-619 [275 P.2d 456].) Plaintiffs' theory thus requires a factual determination as to whether they reasonably and in good faith pursued their remedies with the governing board from May 1966 until December 1967, when this action was filed. Since they failed to raise the theory in the trial court, no such factual finding has been made. Under the circumstances, plaintiffs are barred from asserting the argument at this late stage of the proceedings. (*Ward* v. *Taggart*, 51 Cal.2d 736, 742 [336 P.2d 534].)

Defendants contend that plaintiffs should not recover for that portion of the school year prior to December 4, 1964. Where there is an annual contract payable in monthly installments, however, the statute runs from the termination of the last contract before the statutory period, and not from the date of each of the monthly payments. (Cf. *Rosborough* v. *The Shasta River Canal Co.*, 22 Cal. 556, 562.) Accordingly, since plaintiffs' appointments were for a school year (§ 13258), and their salaries were set as annual compensation, the trial court properly allowed

recovery based on the annual compensation even though payment of their salaries was made to plaintiffs in installments (§§ 13517-13519).

The judgment is affirmed, each side to bear own costs on appeal.

Mosk J., and Burke, J., concurred.

**WRIGHT, C. J.**—I concur.

Were it not for the subsequent passage of section 13338.1[1] I would regard *Heckley* v. *Board of Education* (1959) 53 Cal.2d 218 [1 Cal.Rptr. 4, 347 P.2d 4] as controlling this case, and would dissent from the court's affirmance of the judgment herein. No tenable factual distinction exists between the instant case and *Heckley*. In both cases teachers were paid exactly what they were promised—part-time wages for what was, in terms of their fellow teachers' obligations, part-time work.

The passage of section 13338.1[2] shortly after our decision in *Heckley* can only be regarded as legislative disapproval of the waiver of statutory salary rights permitted by *Heckley*. It is possible, as defendants contend, to construe the second paragraph of section 13338.1 as permitting just the sort of part-time, part-salary arrangement as is presented here. There are, however, several cogent objections to such a construction.

First, this would require us judicially to define the words "full-time" as used in section 13338.1 in a sense contrary to that set forth by express statutory definition in section 13525: " 'Full time' means not less than the minimum schoolday for each day the schools of the district are maintained during the school year." Section 11003 in turn sets 180 minutes, the length of the kindergarten classes taught daily by plaintiffs, as the minimum schoolday for pupils of kindergartens.

Second, the exempting paragraph of section 13338.1 specifically refers to "governing boards of school districts" in permitting "governing boards" to employ persons for less than full-time teaching. At trial in the instant case, plaintiffs proved that they were hired without contracts by the su-

---

[1]All references to code sections are to the Education Code.

[2]Section 13338.1 provides:

"Except as provided in Sections 13406 and 13448, any contract or agreement, express or implied, made by any employee to waive the benefits of this chapter or any part thereof is null and void.

"Notwithstanding provisions of this or any other section of this code, governing boards of school districts may employ persons in positions requiring certification qualifications on less than a full-time basis."

perintendent and assistant superintendent of the school district. Defendants in fact stipulated that "the specific written rules and regulations of the board of trustees[3] do not make any reference to the particular position occupied by these employes [i.e., plaintiffs.]"[4] Thus it does not appear that the hiring of plaintiffs as "long-term substitutes" without contracts by the superintendent and assistant superintendent of the school district was an act of the "governing board" within the ambit of section 13338.1's exempting paragraph.

Third, and most crucial to my concurrence in the court's opinion, is the fact that the Education Code which encompasses section 13338.1 represents an extensive legislative effort at imposing state-wide educational standards on local school districts. " '[T]he legislature [has] enjoined on [governing boards], within reasonable limits, the principle of uniformity of treatment as to salary for those performing like services with like experience. . . . [¶] Defendants contend that the ordinary rules of contract apply to a teacher, and that, since plaintiffs accepted their reduced rating, they are barred from now questioning its validity. While it is true that the relation between the [governing board] and a teacher is that of employer and employee, and that this relationship is created by contract, the terms of [the] contract are to be found in the authority granted the [governing board] by law.' " (*Fry* v. *Board of Education* (1941) 17 Cal.2d 753, 757, 760 [112 P.2d 229].) I believe that under the "ordinary rules of contract" plaintiffs had received prior to their suit everything to which they were entitled. Nevertheless, the Legislature has chosen, through section 13338.1, to ban waivers of benefits statutorily accorded to teachers. Section 13338.1 should thus be accorded a liberal construction in keeping with the legislative policy of insuring "uniformity of treatment" of teachers by governing boards.

Statutorily enforced "uniformity of treatment" of teachers is a step towards fulfillment of this court's call for state-wide "uniformity of treatment" of pupils. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) Insofar as legislative efforts at standardizing teacher salaries serve "the cherished idea of American edu-

---

[3]Section 921 provides that a governing board may be denominated as either a "board of school trustees" or a "board of education."

[4]On cross-examination by plaintiffs of the superintendent of the school district who, as assistant superintendent, had hired plaintiffs as "long-term substitutes," the following exchange occurred:

"Q. So far as the [plaintiffs] were concerned, because there was no contract, the governing board actually never passed on any contractual relationship between [plaintiffs] and the district, is that correct?

"A. That's right."

cation that in a democratic society free public schools shall make available to all children equally the abundant gifts of learning," (*id.,* at p. 619; italics added) I believe the exempting paragraph of section 13338.1 should be narrowly construed. Thus despite my feelings as to the individual equities of this case, I concur in the court's opinion.

Tobriner, J., and Sullivan, J., concurred.