**Mafu INADA, Plaintiff-Appellant,**

v.

**Sgt. Richard SULLIVAN, a Chicago Police Officer, and certain other Chicago Police Officers whose identities are unknown at present, Defendants-Appellees.**

Nos. 74–1338, 75–1101.

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1975.

Decided Aug. 18, 1975.

Frederick F. Cohn, Chicago, Ill., for plaintiff-appellant.

Richard L. Curry, Corp. Counsel, Jerome A. Siegan, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before SWYGERT and BAUER, Circuit Judges, and EAST,* Senior District Judge.

SWYGERT, Circuit Judge.

Mafu Inada is a Japanese national who resides in the state of Illinois. On July 20, 1973 Inada filed a complaint in the United States District Court for the Northern District of Illinois charging Richard Sullivan, a Chicago police officer, with various violations of his civil rights. This complaint was drafted and filed by Inada himself, and was prolix and rather confusing. The complaint was dismissed for failure to state a claim on February 20, 1974. A motion to reconsider was filed, also pro se, on March 14, 1974 and denied on the same day. In denying the motion to reconsider, the district judge told Inada that if he had a claim for which relief could be granted, he simply had not "been able to put it into words that meet the requirements of law." In response to Inada's request for time to find a lawyer, the judge told him, "you've got [a] few days. If a lawyer comes in here—all he has to do is come in here and present a proper motion, or file a new suit, as far as that is concerned."

In response, Inada did retain a lawyer. Instead of immediately seeking to amend his original complaint or to file a new complaint, however, Inada initially decided to file a notice of appeal from the

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

order of dismissal. Notice was filed on March 21, 1974. Thereafter Inada filed a new complaint based on the same facts alleged in the original pro se papers. This complaint was drafted by Inada's attorney, and was filed on July 10, 1974. On plaintiff's motion this new cause was transferred to the same district judge who had ruled on Inada's original complaint. On January 10, 1975 the second action was dismissed on grounds of res judicata (based on the dismissal of the original pro se complaint), the applicable statute of limitations, and failure to state a claim. Notice of appeal was filed in this second action on January 20, 1975. Inada's two appeals have been consolidated for consideration by this court.

Both parties agree that the second complaint filed by Inada was essentially a repetition of the claims asserted in the first complaint, but rendered in "lawyer's language." An examination of the two complaints bears this out. Plaintiff contends that this second complaint was specifically invited by the district judge in his remarks on March 14, 1974 when he denied Inada's pro se motion to reconsider dismissal of the first complaint, and that under these circumstances the dismissal of the ·pro se complaint for failure to properly state a claim and the precautionary filing of notice of appeal from that order should not bar the second suit. It is urged that this court should instead concentrate its analysis on the sufficiency of the allegations contained in the second complaint and in effect disregard the pro se action. Given the facts in this rather unusual case, we agree.

When the district judge ruled on the March 14 motion to reconsider he indicated that he would entertain a motion to amend, or in the alternative, an entirely new complaint. At the same time, however, he specifically stated that the dismissal of the pro se complaint would not be without prejudice:

The Court: Well, you've got the few days. If a lawyer comes in here—all he has to do is come in here and present a proper motion, or file a new suit, as far as that is concerned. *This one is not dismissed without prejudice. This is dismissed for failure to state a cause of action.* There is nothing to prevent you from getting a lawyer, if you want to, and if you have a good suit, to bring it. I have extended myself all the way, and according to the Court of Appeals, we had service of process, and you have had an opportunity to do it, and so the only thing I can say is appeal it again. (emphasis added).[1]

Thus, when Inada consulted an attorney immediately after this ruling there was no way of determining exactly what the order of the district judge contemplated. Taking the cautious approach, the attorney advised that notice of appeal be filed to preserve any rights determined by that order while a new complaint was being drafted.

Inasmuch as the second complaint represents a more understandable, and presumably complete statement of Inada's claims for relief, we believe that justice and judicial economy will be best served by considering now the legal sufficiency of the claims set out in that document. Certainly defendant Sullivan cannot complain of any injustice as a result of this procedure since he has conceded that the original pro se complaint differs from the second complaint only in the degree of clarity with which the claims are presented. Given the fact that Inada has retained counsel at least in part at the urging of the district judge, it would seem appropriate to consider the pro se complaint and appeal to be merged with the second action and to afford this case an initial review based on the professionally drafted complaint.

Inada first alleges that on April 7, 1968 he was illegally arrested by defend-

---

1. It is not clear what the district judge was referring to in the last sentence of the quoted statement. There is no record of any previous appeal in this matter having to do with service of process or with any other issue.

ant Sullivan without reason or probable cause, and that in connection with his illegal arrest Sullivan caused Inada's properly parked car to be towed to the police auto pound, also without legal justification of any kind. It is further alleged that Sullivan's actions were based on personal dislike of Inada due to his negative comments concerning the Chicago Police Department and due to prejudice against Inada because of his Japanese ancestry.

▇▇▇ These allegations, if timely, would state claims for which relief could be granted under the Civil Rights Act of 1871, 42 U.S.C. § 1983. *Joseph v. Rowlen,* 402 F.2d 367, 368–69 (7th Cir. 1968); *Pritchard v. Perry,* 508 F.2d 423, 424–25 n. 1 (4th Cir. 1975); *Gibson v. City of Seattle,* 472 F.2d 1220, 1221 (9th Cir. 1973). But it appears from the face of the complaint that the challenged arrest and seizure of property took place more than five years prior to the filing of the complaint, so that the applicable statute of limitations would bar suit. *Rinehart v. Locke,* 454 F.2d 313, 314 (7th Cir. 1971).

▇▇▇ Plaintiff attempts to meet this deficiency with a wholly conclusory allegation that Sullivan conspired with others in the police department to prevent plaintiff from proceeding with his civil suit by creating a sham internal investigation of the 1968 incident.[2] This artifice is relied upon to toll the statute of limitations for over five years. In his brief in this court Inada attempts to bolster his bare allegation with references to two "conspiratorial acts" described in the original pro se papers. But the incidents referred to, which took place in 1969 and 1970, were of a character which clearly indicated that neither Sullivan nor the internal investigation unit had any intention of assisting Inada in any way in the investigation of his claim.[3] Thus it cannot be said on the basis of these alleged acts that Inada was in any way "lulled" into inactivity by Sulllivan or others in the department. In addition it appears of record that Inada was in fact convicted of disorderly conduct as a result of the 1968 arrest, so that it would be entirely unreasonable for him to contend that he legitimately expected the department to act further in the matter.[4]

It has been said that "when the facts, alleged or assumed within the framework of the complaint show that the claim is without merit there is no need to go to trial." *Hoshman v. Esso Standard Oil Co.,* 263 F.2d 499, 502 (5th Cir. 1959). Here, even if Inada could prove that despite the incidents in 1969 and 1970, and despite his conviction growing

2. The conspiracy allegation reads in its entirety as follows:

Subsequent to plaintiff's arrest, plaintiff attempted to have the Chicago Police Department conduct an investigation into the incidents arising out of his improper arrest on April 7, 1968. However, defendant Sullivan and other members of the Chicago Police Department, whose identities are unknown to plaintiff at this time, conspired to deprive plaintiff of his constitutional rights and to prevent plaintiff from proceeding with appropriate legal action by going through the facade of having an investigation of the conduct of defendant Sullivan and other unknown Chicago police officers with whom Sullivan conspired, when in fact there was no fair investigation of their conduct at all. The failure of the Department to conduct a fair investigation of the charges brought against members of the Department by plaintiff has impaired plaintiff's position in bringing legal action against defendant Sullivan and other officers.

3. The first of the alleged incidents involved the refusal of Sullivan to sign or accept a copy of a letter to the Department of Justice concerning the 1968 arrest. The second alleged incident concerned the tearing up of certain papers Inada sought to give to defendant Sullivan and the forcible removal of Inada from the office of the Internal Investigation Division, where he had gone to complain about the tearing up of the papers. These two events, as described by Inada himself, fly in the face of any contention that he was somehow misled into thinking that the department was continuing an investigation of the 1968 incident.

4. It is also contended that an incident which occurred on June 6, 1973 constituted an act in furtherance of the conspiracy. See text, *infra.* This alleged act did not take place until after the statute of limitations had run, however, and thus cannot be said to have caused the critical delay in this case.

out of the arrest, he still believed that the internal investigation unit would continue to look into the matter, he would nonetheless fail to show a proper basis for equitable tolling of the statute of limitations. The simple fact is that such an internal investigation has nothing whatever to do with Inada's right to seek relief in a court of law, and there is no allegation in his complaint that he was misled as to the *function* of such an investigation.[5] On these pleadings the 1968 claims would appear to be time-barred.

 Inada also claims that on June 6, 1973 Sullivan and another individual whose name is unknown visited the Japanese Consul General in Chicago and there communicated a threat to the effect that if Inada did not stop bothering Sullivan by pursuing his objections to the 1968 arrest, Sullivan would take action to have Inada deported. This incident, if proven, may entitle Inada to relief, since the actions alleged may constitute an interference with his rights to use the courts and to petition the government for redress of grievances. These rights are guaranteed to Inada by federal statute 42 U.S.C. § 1981; *Takahashi v. Fish & Game Comm'n,* 334 U.S. 410, 419, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948); *Roberto v. Hartford Fire Ins. Co.,* 177 F.2d 811, 813–14 (7th Cir. 1949), and are enforceable either directly under that statute, *Mizell v. North Broward Hospital District,* 427 F.2d 468, 470 (5th Cir. 1970), or under the Civil Rights Act of 1871, 42 U.S.C. § 1983, since this interference was alleged to have been carried out under color of Sullivan's authority as a state officer. In addition, since the acts complained of were al-

leged to have been based on Inada's Japanese ancestry, he states a claim under the Equal Protection Clause of the Fourteenth Amendment, which protects against discriminatory state action based on race or alienage. *Sugarman v. Dougall,* 413 U.S. 634, 641, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973).

Having found that Inada has stated a claim for which relief may granted, we vacate the orders of the district court in both of these appeals and remand this case for further proceedings consistent with this opinion.

---

**5.** Certainly Inada might have hoped that evidence gathered during such an intra-department investigation would be useful in his civil suit, but this hope cannot justify his failure to file the civil complaint within the statutory period. Inada was fully aware of all the facts he needed to state his claim shortly after the arrest. He does not allege that he expected to recover damages through the internal investigation, so this is not a case of exhaustion of a parallel state administrative remedy. Citation of *Campbell v. Graham Armstrong,* 9 Cal.3d 482, 107 Cal.Rptr. 777, 509 P.2d 589 (1973) is therefore not in point. Similarly, since it is not alleged that any promise was made to Inada that his claim for damages (which is all that is at stake in this suit) would be settled on the basis of such an investigation, the cases of *Longo v. Pittsburgh & Lake Erie R. R.,* 355 F.2d 443 (3d Cir. 1966) and *Flagler v. Wessman,* 130 Ill.App.2d 491, 263 N.E.2d 630 (2d Dist. 1970) are also irrelevant.