Opinion
MORRIS, J.
The question presented in this appeal is whether a certificated teacher who was employed and paid the salary of an “associate teacher,” as established by the school district under a differentiated staffing exemption pursuant to Statutes 1970, chapter 966, pages 1734-1735 (uncodified), is entitled to back pay for the difference between the amount paid and the amount provided in the district’s salary schedule for a full-time certificated employee, as required by Education Code section 45028.[1]
Section 45028 provides: “Effective July 1, 1970, each person employed by a district in a position requiring certification qualifications except a person employed in a position requiring administrative or supervisoiy credentials, shall be classified on the salary schedule on the basis of uniform allowance for years of training and years of experience. . . .”
*297 Except in circumstances not here relevant, the requirements of section 45028 may not be waived by any employee. (§ 44924, former § 13338.1.)
With the stated purpose of enabling a limited number of school districts to establish pilot programs using differentiated staffing patterns without a decrease in state support, the Legislature enacted a special statute, effective November 23, 1970, which provided exemption for certain schools from the minimum class size standards and reporting requirements otherwise prescribed by section 41376 (former § 17507)[2] of the Education Code. The special statute, Statutes 1970, chapter 966, pages 1734-1735, provided in pertinent part as follows:
“Section 1. Upon the application of the governing board of an elementary or unified school district, the Superintendent of Public Instruction may exempt for five fiscal years from the minimum class size standards and reporting requirements prescribed by Section 17507 of the Education Code, not more than four of the elementary schools and one junior high school maintained by such district. The exemptions authorized by this act may not be made with respect to more than five school districts.
“No exemption shall be renewed unless a full report and evaluation of the results of the pilot program has been presented to the Legislature and to the Superintendent of Public Instruction, and the Superintendent of Public Instruction determines that the results warrant an extension of the exemption. Any exemption may be extended for a period not to exceed five fiscal years.
“Sec. 2. The certificated employees of a school which, pursuant to Section 1 of this act, has been granted an exemption from the minimum class size standards of Section 17507 of the Education Code, shall not be subject to the provisions of Section 13506 of the Education Code which require certificated employees to be classified on the salary schedule on the basis of uniform allowances for years of training and years of experience. In lieu of such classification, the governing board of the district may establish salary schedules pursuant to which the salaries of such certificated employees are determined by job specifications rather than training and experience.” (Italics added.)
*298 Although the statute has been twice amended (Stats. 1972, ch. 1391, p. 2888; Stats. 1973, ch. 100, pp. 162-163), there was no substantive change in section 2 relating to salary schedules.
On March 16, 1971, respondent Ocean View School District (the District) obtained a five-year exemption pursuant to chapter 966 of Statutes of 1970 for five of its elementary schools. The exemption was extended for an additional five years commencing July 1, 1976.
Appellant Victoria Kain was first employed by the District as a certificated employee in a position requiring certification qualifications during the school year 1973-1974. She was offered and accepted employment as an “associate teacher” for the school year 1973-1974. The contract was renewed each year for the school years 1974-1975, 1975-1976, 1976-1977, and 1977-1978. On March 16, 1976, she received a notice that when she returned to duty as an “associate teacher” in September 1976, she would attain permanency for the 1976-1977 school year.
As an associate teacher she was paid the following salaries: 1973-1974 school year—$5,000; 1974-1975 school year—$6,500; 1975-1976 school year—$6,825, and 1976-1977 school year—$7,166. During that same period a full-time regular teacher with the same qualifications as Kain received the following salaries, based upon years of training and experience: 1973-1974 school year—$10,000; 1974-1975 school year—$10,921; 1975-1976 school year—$12,913, and 1976-1977 school year—$15,158.
Victoria Kain and Ocean View Teachers Association (OVTA), the exclusive employee organization of the “teachers” of the District, sought a writ of mandate to compel the District to (1) classify Kain as a full-time permanent certificated employee, (2) employ her in a full-time teaching position and assign her to such position for the 1977-1978 school year, (3) pay her salary as a full-time certificated employee, according to the regular salary schedule for the school years 1973-1974, 1974-1975, 1975-1976, 1976-1977 and 1977-1978, and (4) pay salaries to all certificated employees serving in “associate teacher” positions in the District for the same school years according to the schedule for regular full-time teachers.
The trial court found that the District had complied substantially with the requirements of chapter 966 of Statutes of 1970, as amended, and was *299 therefore entitled to the exemption therein provided, and entered judgment denying the writ of mandate. This appeal followed.
Additional facts essential to an understanding of the parties’ contentions are as follows:
The Superintendent of Public Instruction granted an exemption from the minimum class size standards and reporting requirements to five schools within the District. One of these schools was Park View School to which Kain was assigned.
A statement setting forth a description of the qualifications, duties, salary, and work year accompanied the offer of employment to Kain (and presumably other associate teachers) for each of the years in question.[3] This job description was entitled “Ocean View School District [If] Associate Teacher—Grades K-8.” However, the evidence reveals the “associate teachers” were assigned only to the five schools subject to exemption from minimum class size and reporting requirements. Moreover, it is clear from the evidence that the “associate teacher” classification was an integral part of the District’s differentiated staffing program.
As set forth in the job description, associate teachers were required to work five hours per day, while a full-time teacher’s basic day of service *300 was established by the governing board at seven and one-half hours per day.
Kain contends that she was a certificated employee of the District who taught for a minimum school day as prescribed by the Education Code. She argues that she was therefore a full-time employee while rendering service as an “associate teacher,” and is entitled to recover back salary for the difference between the amount shown on the teacher’s salary schedule for full-time certificated employees and the amount actually paid to her for the school years she served as an associate teacher.[4] OVTA makes a similar contention with respect to all other certificated employees as “associate teachers” in the District.
In support of these contentions, Kain and OVTA launch a two-pronged attack calculated to avoid the effect of the chapter 966 exemption provisions.
The first prong may be characterized as the minimum school day argument, and the second as the job specification salary schedule argument.

The Minimum School Day Argument

Section 45024 (former § 13503) provides in pertinent part as follows: “Every person employed by the district in a position requiring certification qualifications ... for not less than the minimum schoolday ... is a full-time employee and his compensation shall be fixed accordingly. Governing boards may require persons employed in positions requiring certification qualifications to serve a longer period time [sic] in each schoolday than the minimums defined in [the Education Code], [5] in order to be compensated as full-time employees, provided all such employees in similar grades or levels are similarly required to serve such longer periods of time. . . .” (Fn. omitted.)
*301 Citing section 45024 and Campbell v. Graham-Armstrong (1973) 9 Cal.3d 482 [107 Cal.Rptr. 777, 509 P.2d 689], Kain and OVTA state that by showing that the “associate teachers” taught five hours a day—one hour more than the minimum school day—they have established the status of the “associate teachers” as full-time employees. As Kain and OVTA point out, while chapter 966 provides that exempt schools shall not be subjected to Education Code requirement that certificated employees be classified on the salaiy schedule on the basis of uniform allowances for years of training and years of experience, it makes no exception with respect to the application of the classification of employees as full-time employees or the application of the tenure provisions.
This argument ignores the language of section 45024 which permits the school boards to establish a longer minimum school day than that provided in the Education Code, and disregards the factual differences between the position of the teachers in the Campbell case and the associate teachers in the Ocean View School District.
In the first place, it is clear that the governing board of the District had established a requirement that full-time teachers serve seven and one-half hours per day, a longer period of time than the Education Code minimum. This fact was recognized in the contractual agreement between the board of the District and OVTA, and the other teachers’ associations.
This was not the case in Campbell v. Graham-Armstrong, supra, 9 Cal.3d 482. In that case the plaintiffs had accepted part-time employment as one-session kindergarten teachers for a time period in excess of the applicable minimum school day. The Supreme Court held that by showing that they had taught for the minimum school day as prescribed by the Education Code, the plaintiffs had established their status as full-time employees.
Since the issue in Campbell was whether in view of section 13338.1 (now § 44924) the teachers could waive their right to the benefits of the statute, the court did not directly deal with the issue of the extent of the school board’s authority to increase the minimum school day. However, it is clear from even a cursory reading of the opinion that the school board had not established a requirement for a longer minimum day as it is authorized to do.
*302 In setting forth the facts the court noted that the two-session (full-time) kindergarten teachers, in addition to being paid on a full-time basis according to the board’s salary schedule, were paid a 9 percent bonus for teaching two classes. (Campbell v. Graham-Armstrong, supra, 9 Cal.3d 482, 485.) Moreover, the court specifically stated, “Whether or not the governing board would have been justified in setting for full-time kindergarten teachers teaching only one session salaries equal at least to the statutory minimum but less than the salaries for full-time kindergarten teachers teaching two sessions is not in issue here, as there is no evidence to show that the governing board attempted to make any such differentiation.” (Id., at p. 489.)
Campbell is simply inapposite to the factual situation here presented. The governing board of the Ocean View School District had exercised its right under section 45024, to require its employees to serve a longer period of time in each school day than the Education Code minimum, in order to be compensated as full-time employees. Thus section 45024 offers Kain and OVTA no relief.

The Job Specification Salary Schedule Argument

The second prong of the argument is a more direct attack upon the District’s exemption status.
In order for a school district to avoid the section 45028 requirement that certificated employees be classified on the basis of uniform allowances for years of training and experience, the governing board must establish “salary schedules pursuant to which the salaries of such certificated employees are determined by job classifications rather than training and experience.” (Stats. 1970, ch. 966, § 2, pp. 1734-1735.)
Kain and OVTA contend that to fulfill this requirement the governing board must establish one job specification salary schedule covering all certificated employees teaching at an exempt school, and that since all teachers at the District’s exempt schools, except associate teachers, were paid pursuant to a salary schedule on the basis of training and experience, the job specification for associate teachers was ineffective to avoid the mandatory requirements of section 45028.
It seems to us that this “all or nothing” approach to a job specification salary schedule is in conflict with the legislative purpose, and is not *303 compelled by the language of the statute. Words rarely have an independent existence apart from the context in which they are used. Therefore, before determining that the exemption from the requirement of a salary schedule based on years of training and experience means that all certificated employees must be placed on job specification salary schedules or none of them may be, some effort should be made to discover the educational goals the legislation was intended to achieve.
The argument gives no consideration to these educational goals. Section 3 of chapter 966 sets forth the purpose of enabling school districts to experiment with differentiated staffing patterns. (Stats. 1970, ch. 966, § 3, p. 1735.) In considering the legislative purpose, Kain and OVTA have simply noted that the statute contains no definition of the term, and conclude that it “merely refers to a staffing pattern which is different from that normally used in the district.”
Since the Legislature would hardly authorize a different staffing simply for the sake of difference, section 3 must be considered in the light of the other sections of chapter 966, in order to understand the reason for authorizing differentiated staffing. Section 1 authorizes the exemption from minimum class size; section 2 relieves the exempt schools from the requirements of classification on the basis of training and experience, and permits classification by job description. (Stats. 1970, ch. 966, §§ 1-2, pp. 1734-1735.) When differentiated staffing is considered in this context, it is reasonably clear that the term differentiated staffing refers to a flexible staffing system which not only differs from existing patterns, but includes internal differences.
Used in this sense, differentiated staffing might well permit a school to have some classes of the standard 30-pupil size, each staffed by one full-time teacher; some classes of more than 30 pupils, staffed by a number of adults having a diversity of skills and varying degrees of experience; and some classes of less than 30 pupils, staffed by either a certificated teacher or an uncertificated person working under supervision. This would permit an almost infinite variety of experimentation to meet the special needs of the pupils of the school district.
An examination of the manner in which the statute was implemented by the participating school districts reveals that this is precisely what was done. Moreover, the initial experiment was so successful in achieving the educational objectives that four districts, including Ocean View School *304 District, were continued under the exemption for another five-year period.
Although there were some differences in the individual needs of the participating schools, the 1975 summary to the California Legislature on the pilot study, reported that four basic objectives had been common to all five districts. These were:
(1) To reduce the pupil-adult ratio by increasing the number of adults in the classroom.
(2) To individualize instruction to meet the unique educational needs of each child.
(3) To increase community involvement in the schools.
(4) To increase the reading and mathematics achievement of students in participating schools.
An examination of the Ocean View program reveals that differentiated staffing was effective in accomplishing these goals in the following ways.
(1) The pupil-adult ratio was reduced by the use of full-time teachers, part-time teachers, associate teachers, and instructional, college, and high school aides. By the use of full-time experienced supervising teachers and team teaching methods, the schools were able to use the part-time teachers, associate teachers and aides in a flexible manner to take advantage of special skills and at the same time provide the necessary direction, supervision, guidance, and assistance to those still in need of such training.[6]
(2) Three factors enabled the District to provide individualized instruction to meet the needs of each child. The reduction in the pupil-adult ratio enabled the adults to give more individualized attention both to the development of academic skills and to the emotional or psychological needs of the pupils; the ability to employ persons With special skills other than full-time teachers increased the variety of opportunities for learning; and the relief from minimum class size *305 enabled the District to use these special skills to provide a more individualized curriculum.[7]
(3) Community involvement was increased particularly through the use of volunteer aides who worked with, and under the supervision of, the full-time, part-time and associate teachers.
(4) The academic achievement of the students was improved as a result of the more individualized instruction, improved discipline, and improved school-community relations.
While the above summary is not intended to be exhaustive, it is illustrative of the function of differentiated staffing in achieving certain educational goals. Obviously, the flexibility necessary to accomplish the above objectives could best be served by the development of staffing which included experienced and effective full-time tenured teachers along with part-time teachers, associate teachers, student teachers and other aides.
The full-time tenured teachers could not have been transferred from the District’s existing salary schedule based on training and experience to a job description salary schedule without extensive negotiations with teachers’ associations representing the permanent teachers of the District. There is no assurance that an acceptable schedule could have been adopted during the period the pilot program was authorized.
By contrast, the introduction of the associate teacher classification into the program achieved the desired flexibility without disturbing the rights of existing tenured teachers. The training and experience of those tenured teachers benefited the program through their assignment as team teachers along with less experienced and part-time teachers.
All of the teachers’ associations, including OVTA, recognized the validity of the job classification of “associate teachers” as a part of the salary schedule in the labor agreement of 1976-1977.[8]
*306 The interpretation urged by OVTA and Kain would defeat the educational goals of the program and would merely substitute one inflexible organizational pattern for the existing one, thus frustrating the legislative purpose.
The trial court correctly concluded that the District was in substantial compliance with the requirements of chapter 966.
The judgment is affirmed.
Tamura, Acting P. J., and Kaufman, J., concurred.
A petition for a rehearing was denied July 6, 1979, and appellants’ petition for a hearing by the Supreme Court was denied August 15, 1979.

Except as otherwise indicated, all statutory references are to the new Education Code, enacted in Statutes 1976, chapter 1010, pages 2384-4581, as amended by Statutes 1976, chapter 1011, pages 4581-4582 and subsequent amendments. Where the language of a former section was carried over without change into the reorganized Education Code, only an initial reference will be made to the old section number. Section 45028 was formerly section 13506.

Under Serrano v. Priest (1976) 18 Cal.3d 728, 771 [135 Cal.Rptr. 345, 557 P.2d 929], former section 17507 is unconstitutional, but only in the context of school financing based on assessed valuation of property per average daily attendance.

Except for the amount of the annual salary, the job description for each year was identical and read as follows: “Duties and Responsibilities “1. The hours spent on the job, during the regular school day, shall average five (5) hours per day. The development of the actual working schedule will be the responsibility of the supervising teacher who will be directing and supervising the program. “2. Will share in the responsibility for diagnosing and prescribing activities for children. “3. Will participate in Team Planning sessions as needed to insure the smooth operation of the program. “4. Will perform those duties as assigned by the supervising teacher and or principal. “Position Qualifications “1. Appropriate teaching credential. “2. Ability and desire to work in a teaming arrangement that requires flexibility and a receptive attitude to change. “3. Ability and desire to profit from direction, supervision, guidance, and assistance provided by his/her team colleagues and or principal. , “Salary “Annual salary of five thousand dollars ($5,000) “Work Year “Work year to be the same as the scheduled work year for the full-time returning certificated employees of the Ocean View School District.”

Kain has also presented as an issue her contention that she has attained tenure as a full-time permanent employee and is entitled to be assigned to a full-time teaching position. Since the District concedes that she has attained tenure as a full-time teacher, this issue is moot. The record before this court does not reveal when Kain was assigned to a full-time teaching position or what salary she received subsequent to the school year 1976-1977. Presumably, following her assignment to a full-time teaching position, she was paid pursuant to the salary schedule for regular full-time teachers.

The parties agree that the applicable Education Code minimum school day was 240 minutes.

During the project years at Ocean View a total of 46 associate teachers were hired, of which a total of 25 were hired as full-time teachers within a 2-year period. Nine had left the District by January 15, 1976.

Special education teachers included learning assistant teachers, speech teachers, aphasic teachers and P.E. aides.

Presumably agreements existed for previous years. However, we do not have copies of those agreements.