[Civ. No. 58711. Second Dist., Div. One. Nov. 25, 1980.]

BASSETT FEDERATION OF TEACHERS LOCAL 727, AFL-CIO et al., Plaintiffs and Respondents, v. BOARD OF EDUCATION OF THE BASSETT UNIFIED SCHOOL DISTRICT, Defendant and Appellant.

COUNSEL

Wagner & Wagner and Patrick D. Sisneros for Defendant and Appellant.

Levy & Goldman and Elizabeth Garfield for Plaintiffs and Respondents.

OPINION

AUERBACH, J.*—Defendant appeals from a judgment granting a peremptory writ of mandate requiring defendant Board of Education of the Bassett Unified School District (District) to retroactively remunerate plaintiffs Robert Faraca (Faraca) and Gary Emert (Emert) as full-time teachers beginning with certain dates in 1974 to and including June 30, 1977, (reduced by compensation already paid them during those periods), to pay legal interest on such award of back pay, and to make full contributions on behalf of Faraca and Emert to the State Teachers Retirement System for these periods of time.

We have determined that the court erred in concluding that plaintiffs' position was supported by *Campbell* v. *Graham-Armstrong* (1973) 9 Cal.3d 482 [107 Cal.Rptr. 777, 509 P.2d 689]. That case ruled that part-time kindergarten teachers who worked a minimum schoolday thereby achieved the status of full-time employees and further held that such rights to full-time compensation could not be waived by their contracts of part-time employment.

*Issue*

Did Faraca and Emert acquire the status of full-time employees for compensation purposes notwithstanding their contracts as half-time employees?

*Facts*

We epitomize the facts only to the extent that they are necessary to an explication of our decision to reverse, since appellants' remaining contentions will require no further discussion.[1]

Faraca and Emert were employed pursuant to separate contracts with the District to render services as certificated teachers on a probationary status. Faraca was initially employed on March 18, 1974, and Emert

---

*Assigned by the Chairperson of the Judicial Council.

[1]These contentions are (1) that mandamus was an inappropriate remedy; (2) that one of the coplaintiffs, namely, Bassett Federation of Teachers Local 727, AFL-CIO (Union) has no standing to prosecute the petition for mandamus; and (3) that the three-year statute of limitations, section 338, subdivision 1 of the Code of Civil Procedure (pertaining to an action upon a liability created by statute), applies.

commenced on September 18, 1974. Both were engaged as half-time teachers at Nueva Vista High School (School), a District continuation day school, and were rehired on the same basis for each succeeding school year through June 30, 1977.

In each year from the inception of their employment, the School scheduled 360 minutes of class time during a schoolday. Faraca and Emert were required to teach 3 hour-long class periods, or 180 minutes per school day, from the start of their employment through the 1976-1977 school year. While so employed, they were compensated at one-half the salary of a full-time teacher in the District.

Faraca and Emert are members of coplaintiff Bassett Federation of Teachers Local 727, AFL-CIO (Union). In June of 1977, the Union filed a grievance complaint on behalf of Faraca and Emert with the District, requesting, among other demands: (1) that Faraca and Emert receive the difference between the salaries they would have received from the commencement of their employment if they had been compensated as full-time employees, (2) 7 percent interest on this amount, and (3) the appropriate amount of contributions to the State Teachers Retirement System.

A series of negotiations to resolve these claims proved abortive. In August 1978, the Union, Faraca and Emert filed their petition for writ of mandate and were successful in receiving the relief delineated above.

In urging reversal, the District contends that the contracts of Faraca and Emert as half-time employees precludes their compensation as full-time employees, relying on the second paragraph of section 44924 (13338.1).[2] Since the plaintiffs rely in part on the first paragraph of that section, we quote it in full: "Except as provided in Sections 44937 [13406] and 44956 [13448] [not here pertinent], any contract or agreement, express or implied, made by any employee to waive the benefits of this chapter or any part thereof is null and void. [¶] Notwithstanding provisions of this or any other section of this code, governing boards of school districts may employ persons in positions requiring certification qualifications on less than a full-time basis."

---

[2]Except as otherwise indicated, all statutory references are to the new Education Code, enacted in Statutes 1976, chapter 1010, pages 2384-4581, as amended by Statutes 1976, chapter 1011, pages 4581-4582 and subsequent amendments.

Where the language of a former section was carried over intact into the reorganized

Plaintiffs concede that the District was authorized to assign them to half-time positions under section 44924. However, they assert that they were certificated employees of the District who taught for a minimum schoolday, namely, 180 minutes as prescribed by section 46170 (11053). They argue that they were therefore full-time employees while rendering their services at the Nueva Vista continuation high school under the guarantees of section 45024 (13503). The statutes alluded to require quotation:

Section 46170 provides: "In continuation high schools and continuation education classes, *a day of attendance* is 180 minutes of attendance but no pupil in any such school or class shall be credited with more than 15 *hours* of attendance in any calendar *week.*" (Italics added.)

Section 45024 provides in pertinent part as follows: "Every person employed by the district in a position requiring certification qualifications...for not less than the *minimum schoolday*...is a full-time employee[3] and his compensation shall be fixed accordingly." (Italics added.)

Citing sections 45024, 46170 and 44924, and relying on the holding in *Campbell* v. *Graham-Armstrong, supra,* 9 Cal.3d 482, plaintiffs contend that by showing that they taught 180 minutes per schoolday they acquired the status of full-time employees and their respective contracts to accept a lesser status are impermissible derogations of their statutory rights.

*Campbell* squarely prohibits the waiver of statutory salary rights by a teacher. The crucial question, therefore, is whether in fact Faraca and Emert surrendered, contrary to law, protected rights to the status of full-time teachers.

A cursory review of *Campbell* might be susceptible of such a construction, but at first blush only. A careful scrutiny of the rationale of

---

Education Code, the new section number will be used and the former section will be in parenthesis at the first citation only.

The section numbers in parentheses were those in force at all times relevant to this controversy, unless otherwise indicated.

[3]Section 45053 (13525) carries out this theme by providing in part: "'Full time' means not less than the minimum schoolday for each day the schools of the district are maintained during the school year."

that case, the special character of the continuation school in the educational structure, the particular significance of the words "a day of attendance," in section 46170, and the constitutional, statutory and administrative purpose that that language is designed to serve, manifest that plaintiffs' position cannot be supported.

In *Campbell*, plaintiffs had accepted part-time employment to teach a one-session kindergarten class requiring 180 minutes of instruction per day. Their salary was substantially below the salary of full-time employees who taught a two-session class, each consisting of 150 minutes. At the time in question, section 11003, since repealed, provided: "The *minimum schoolday* for pupils of kindergartens...inclusive of recesses...."[4] (Italics added.)

In *Campbell*, the Supreme Court pointed out that section 45024 defined a full-time certificated employee as one working not less than the *minimum schoolday*. It further pointed out that section 45053 described "full-time" as meaning not less than the minimum schoolday for each day the schools of the District are maintained. Reading these sections in conjunction with section 11003, the court held that plaintiff teachers had established their status as full-time employees by showing that they had taught for the minimum schoolday as prescribed by the Education Code, and in view of section 44924 could not waive their rights to the benefits of the statute.

■ The *sine qua non* of plaintiffs' position is the facile assumption that "minimum schoolday" and "a day of attendance" are fully synonymous and congruent in their effects on the statutes which define "full-time" employment. But there is a crucial disparity between the sections construed in *Campbell* and section 46170, on which plaintiffs bottom their claims. In *Campbell*, the interlocking key words "minimum schoolday" appear in the statute fixing compensation (45024), the statute defining "full-time" (45053), and the statute governing the teaching assignment there involved (11003). However, there is no mention whatsoever of the all-important words "minimum schoolday" in section 46170 (a provision relating to *continuation* high schools), although that term (or the affinity phrase "minimum day") is invariably used in every other section that deals with the schoolday in relation to

---

[4]Its closest contemporary counterpart is section 46117, which reads: "The minimum schoolday for pupils in kindergartens is 180 minutes inclusive of recesses, and no units of average daily attendance shall be credited for attendance in kindergarten classes if the minimum schoolday of such classes is less than 180 minutes."

class time requirements for nonadult students in regular or special day classes.

A compressed catalogue is illustrative. The word "minimum" in conjunction with either "schoolday" or "day" appears in the following statutes relating to regular or special day classes: sections 46117 (11301) and 46118[5] (11301.5) relating to kindergartens; 46112 (11005) and 46114 (11006.5) relating to grades one, two, three; 46113 (11006) relating to grades four, five, six, seven and eight; 46115 (11007) relating to the effect of noon recesses and intermissions in kindergartens and grades one through eight inclusive; 46116 (11008) and 46143 (11054) relating to the educationally handicapped; 46142 (11052.5) relating to junior high schools; 46180 (11075) relating to opportunity schools; 46144 (11055) relating to vocational schools; 46145 (11056) and 46147 (11057) relating to exemptions provided for certain last-quarter or last-semester pupils in the twelfth grade; and 46141 (11052) relating to high schools.[6] This latter section, it is important to note, specifically excepts, among others, continuation high school and continuation education classes, leaving it to be dealt with in section 46170.

By way of contrast, the text of section 46170 does not purport to deal with the fixing of a minimum schoolday as do all the statutes last noted. Instead, it alludes to "a day of attendance" and it introduces the concept, not present in any of the statutes previously cited in the preceding paragraph, of limiting maximum attendance to no more "than 15 hours of attendance in any calendar week."

Plaintiffs contend that even though section 46170 does not use the phrase "minimum schoolday" the Legislature intended "a day of attendance" to have that meaning and that no other interpretation is possible. The fallacy in this argument is that plaintiffs' attempted analogy of the terms "minimum schoolday" with "a day of attendance" is insufficient—analogy does not help when homology is essential to bring plaintiffs within the ambit of *Campbell*. But even more destructive of plaintiffs' position is the fact that the term "minimum schoolday" was purposefully omitted from section 46170 in favor of "a day of attendance," language which, as will be developed, has significance in the context of continuation education classes solely with respect to the apportionment of school funds.

[5]Including kindergartens at the time covered by plaintiffs' complaint (11003).

[6]With one exception not here pertinent, these sections prescribe the minimum schoolday in terms of minutes only.

Article IX, section 6, of the California Constitution requires the Legislature to provide sufficient state revenues to the state school fund so as to provide for apportionment in each fiscal year of a maximum amount per pupil in average daily attendance in the kindergarten, elementary, secondary and technical schools in the public school system during the preceding fiscal year and to provide for apportionment of the fund each fiscal year.

This constitutional mandate for the financing of the California school system is implemented by a number of statutes, which provide for apportionment of revenues as determined by an enumeration of pupils based on average daily attendance. (See §§ 14000 (17300) to 14022 (17301.12), inclusive.) Section 46300 (11251) governs the methods by which a school district shall normally compute average daily attendance as a part of its fiscal operations. With respect to continuation education, section 46331 (11402) provides "[t]he units of average daily attendance in the...continuation high schools...of a district for a fiscal year are the quotient arising from dividing the total number of days of pupils' attendance in such high schools and classes by 175."

The change in terminology from "minimum schoolday" in the various statutes previously cited to "a day of attendance" and hours per calendar week in section 46170 is not a fortuitous interchange of linguistic alternatives. It is, rather, the reflection of conceptual nuances which distinguish the regular educational process from the pattern and design of continuation education. Under the California Compulsory Education Law, all nonexempt persons between the ages of 6 and 16 are subject to compulsory full-time schooling. (§ 48200 (12101).) It is expected that after the equivalent of 12 years of schooling, the day-school pupil will have achieved a high school diploma. The actual experience is that many pupils drop out of the normal day school program. They leave the scholastic scene for a variety of reasons—because of employment, marriage, disinclination to pursue academic studies, idiosyncrasies of personality and attitude, or because of the dictates of the necessities and vicissitudes of life. To enable these individuals who are between the ages of 16 and 18, who have not graduated from high school or its equivalent and are not otherwise exempt, to further their education and perhaps gain a high school diploma, the state has provided for a compulsory continuation education program and requires such a program to be maintained by the governing board of the high school district (§§ 48400 (12551) and 48432 (5952)).

The Legislature has distinguished between employed and unemployed minors in formulating attendance requirements for continuation students. Section 48400 requires continuation education attendance "...for not less than four 60-minute hours per week for the regularly established annual school term. Such minimum attendance requirement of four 60-minute hours per week may be satisfied by any combination of attendance upon special continuation education classes and regional occupational centers of programs."[7] For a minor who is not regularly employed, section 48402 provides that such a pupil shall attend "...for not less than 15 hours per week, special continuation education classes during the period of unemployment. The minimum attendance requirement of 15 hours per week may be satisfied by any combination of attendance upon special continuation education classes and regional occupational centers or programs." These sections amply demonstrate that the factor of a minimum schoolday, so significant in the normal school structure, ceases to be of paramount concern in dealing with the continuation school setup. Here the time requirements for pupils are based on hours per week and may be satisfied by any combination of continuation educational classes or studies in regional occupational centers. Section 46170, upon which Faraca and Emert rely, is a reflection of these policies in its recitation that "...no pupil in any such school or class shall be credited with more than 15 hours of attendance in any calendar week." It is similar in concept and phraseology to the vocabulary used in ordinary classes for adults (§ 46190 (11151)),[8] adults in county jail classes (§ 46191 (11151.5)),[9] and for physically handicapped adults (§ 46192 (11152)).[10] ■ In all of these latter statutes, as is the case with section 46170, it is patent that the use of the words "a day of attendance" has as its function to assist in determining the average daily attendance upon which the apportionment of school funds is

---

[7]See section 52300 (7450) et seq., for the nature of the regional occupational program.

[8]Section 46190 provides: "In classes for adults, a day of attendance is 180 minutes of attendance but no student shall be credited with more than 15 clock hours of attendance during any one school week...."

[9]Section 46191 provides: "In classes for adults maintained for adults in any county jail, or any county industrial farm or county or joint county road camp, a day of attendance is 180 minutes of attendance; but no pupil in such a class shall be credited with more than one day of attendance in any calendar day, nor with more than 15 clock hours of attendance during any one school week."

[10]Section 46192 provides: "Each clock hour of teaching time devoted to the individual instruction of physically handicapped adults who are patients in a tuberculosis ward or hospital maintained by one or more counties shall count as one day of attendance but no such adult shall be credited with more than one day of attendance in any calendar day."

based, rather than to prescribe the minimum schoolday as that term is used in sections 45024 and 45053 for purposes of defining full-time employment.

This purpose is clarified by title 5, California Administrative Code, beginning with section 400, which prescribes the regulations for recording days of attendance for apportionment of state funds. Title 5, section 402, provides in part: "For apportionment purposes, attendance of a pupil upon schools or classes maintained by a school district...may be counted when the pupil is present during the time lawfully prescribed for the school or class in which he is enrolled...." Title 5, section 403, provides in part: "Subject to the provisions of Sections 402, 404, and 405, for apportionment purposes a pupil enrolled in a *regular day* class or a *special day* class for the *minimum school day* applicable to him (except pupils whose attendance is recorded by *clock hour*) is deemed present for the entire school day,..." (Italics added.) Title 5, section 404, provides in part as follows: "Subject to the provisions of Sections 402...a pupil enrolled in a class described in Section 406 is deemed present, and he shall not be counted or recorded as absent for *apportionment* purposes, unless he is absent the entire *clock hour.*" (Italics added.) Section 406 provides in part: "Attendance shall be reported in clock hours for the following: [¶] (a) Pupils enrolled for *less than the minimum school day.* [¶] (b) Pupils in classes for adults wherever held pursuant to the Education Code. [¶] (c) Pupils enrolled in work experience programs. [¶] (d) *Pupils in continuation education schools or classes.* [¶] (e) Pupils in regional occupational centers or regional occupational programs. [¶] (f) Pupils in summer schools. [¶] (g) Physically handicapped pupils...." (Italics added.)

What is abundantly evident from this administrative treatment is that for apportionment purposes a minimum schoolday constitutes a day of attendance per se for pupils enrolled in regular or special day classes, whereas the attendance of continuation school students, among others, who are not required to enroll for a minimum schoolday is reported in terms of clock hours, in order to calculate a day of attendance.

These administrative regulations were promulgated long before Faraca and Emert entered the school system. They clearly reinforce the proper interpretation of the words "a day of attendance" as used in section 46170, and parallel statutes relating to students not enrolled in regular or special day classes, namely, as an accounting term used to

compute the average daily attendance for purposes of apportioning school funds in those cases where pupil attendance is recorded in clock hours rather than in minutes comprising a minimum school day. ■ "'Statutes should be construed so as to be given a reasonable result consistent with the legislative purpose'" and in harmony with "the entire statutory system of which it forms a part." (*Prunty v. Bank of America* (1974) 37 Cal.App.3d 430, 436 [112 Cal.Rptr. 370].) Furthermore, great weight should be accorded to the administrative construction of those charged with the enforcement and interpretation of a statute where such construction is consonant with the statutory scheme. (*REA Enterprises v. California Coastal Zone Conservation Com.* (1975) 52 Cal.App.3d 596, 611 [125 Cal.Rptr. 201].) It follows, therefore, that *Campbell* is simply inapposite in the context of the continuation education program. ■ Section 46170, which studiously and deliberately omits any reference to a minimum schoolday, cannot be equated with section 45024, which defines full-time employment in terms of service for a minimum schoolday.

■ The position of a teacher is created and fixed by the terms of contracts of employment, which will not be abrogated unless a clear statutory mandate compels such a result. (*Paulus v. Board of Trustees* (1976) 64 Cal.App.3d 59, 61-62 [134 Cal.Rptr. 220].) Faraca and Emert each accepted half-time employment under section 44924. They worked half-time and received commensurate compensation. They waived no statutory rights to full-time status. To justify payment to them as full-time employees would necessitate a Procrustean manipulation of section 46170, inharmonious with the design of the Education Code.

A final word should be addressed to the presentation of this case in appellant's briefs. Apart from a cryptic statement that *Campbell* does not apply to continuation schools and the dry observation that section 46170 is different than other statutes which prescribe a minimum schoolday, appellant has been of paltry assistance to the court. Its briefs are bereft of any analysis of the place of continuing education in the legislative plan and have left totally unexplored the perspective to be deduced from the language of section 46170 as a tool to determine average daily attendance. The inadequacy of appellant's presentation below led the trial court into error. Appellant's counsel owes this court a higher duty than a mere replication of the anemic points and authorities submitted at the trial level which are designed more to perpetuate

error than to assist in redressing it. (*Olson* v. *Glens Falls Ins. Co.* (1960) 181 Cal.App.2d 165, 167 [5 Cal.Rptr. 233]; *People* v. *Taylor* (1974) 39 Cal.App.3d 495, 496 [114 Cal.Rptr. 169].)

## *Disposition*

The judgment is reversed with instructions to enter judgment for defendant.

Spencer, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 18, 1980, and respondents' petition for a hearing by the Supreme Court was denied January 28, 1981. Bird, C. J., was of the opinion that the petition should be granted.